CHARLES ED BOLAND, Personal Representative of the Estate of Eric J. Vandiver, Plaintiff-Appellant, v. KAWASAKI MOTORS MANUFACTURING CORPORATION, USA, et al., Defendants-Appellees.

Fourth District    No. 4—98—0911

Argued November 16, 1999.—Opinion filed January 7, 2000.

John R. Patchett (argued), of Winters, Brewster, Crosby & Patchett, of Marion, for appellant.

John R. Musgrave, Mark A. Bayles (argued), and Steven E. Kellogg, all of Thompson Coburn, L.L.P., of St. Louis, Missouri, for appellees.

PRESIDING JUSTICE COOK delivered the opinion of the court:

On June 19, 1992, Eric J. Vandiver was injured while riding a 1989 Kawasaki KLF 220A2 Bayou four-wheel all-terrain vehicle (Kawasaki ATV). The accident occurred at an abandoned strip mine adjacent to Sparkling Springs Camp Ground near Danville, Illinois, where Vandiver worked as a maintenance man and security guard. There were no witnesses to the accident; however, it appears that Vandiver overturned the Kawasaki ATV while attempting to ascend a steep incline as he was exiting one of the strip mine pits.

Vandiver suffered a vertebrae injury leaving him paralyzed from

the shoulders down. He died approximately one month later. Charles Boland, Vandiver's uncle, brought this products liability suit against Kaw Town Kawasaki Sales and Service, Inc., Kawasaki Heavy Industries, Ltd., and Kawasaki Motors Manufacturing Corp., USA (defendants). Plaintiff settled with Kaw Town Kawasaki Sales and Service, Inc., and the matter proceeded to jury trial against the remaining defendants.

After a three-week trial, the jury found in favor of defendants. Plaintiff filed a motion for a new trial or judgment *n.o.v.*, which was denied. This appeal followed. Plaintiff seeks reversal of the jury verdict and requests a new trial, claiming that the circuit court erred by (1) permitting defendants' expert witnesses to testify comparing the Kawasaki ATV with other ATVs despite the fact that the opinions were not disclosed in discovery, and (2) instructing the jury on the issue of assumption of risk. We find that the circuit court's decisions regarding these issues were within its sound discretion and we affirm.

## I. BACKGROUND

On the morning of the accident, one of Vandiver's coworkers, James Biggerstaff, brought the Kawasaki to Sparkling Springs so he could ride in the vicinity of the abandoned strip mines. Vandiver arrived early for his shift, which began at 3:30 p.m. Since he had extra time before starting work, Vandiver asked Biggerstaff if he could ride the Kawasaki ATV. Vandiver told Biggerstaff that he had never ridden a Kawasaki ATV but had ridden dirt bike motorcycles. Biggerstaff showed Vandiver how to operate the reverse (a function different from a dirt bike) and cautioned Vandiver to "take it easy" until he got the feel for the Kawasaki ATV.

As the start time for Vandiver's work shift approached, Biggerstaff became concerned because he had not seen Vandiver since his departure on the Kawasaki ATV. Biggerstaff eventually found Vandiver lying at the bottom of a strip mine pit. Vandiver, still conscious, informed Biggerstaff that he could no longer move his arms and legs. Vandiver's only communication with Biggerstaff regarding the accident was that "it came over on me."

Plaintiff's complaint alleged that the Kawasaki ATV was defectively designed and unreasonably dangerous because (a) the design allows it to become unstable and to roll over backward while ascending hills, (b) Kawasaki failed to warn riders of the danger of overturning when being operated on a hill, and (c) Kawasaki failed to warn or notify riders of the rider-active design of the ATV, *i.e.*, the need to adjust one's weight on the vehicle to prevent rollovers.

### A. *Expert Testimony for Plaintiff and Defense*

As is common with products liability litigation, the parties relied

heavily on expert opinions to support their respective positions. Plaintiff's engineering expert was H. Boulter Kelsey. Plaintiff also called Stuart Statler, a former commissioner for the Consumer Products Safety Commission (CPSC) to testify that the Kawasaki ATV and all ATVs are imminently hazardous products. Defendants called Ron Robbins and Kevin Breen to support their defense, impeach plaintiff's experts and rebut the opinions that the Kawasaki ATV was unreasonably dangerous. The deposition testimony and trial testimony of these expert witnesses is central to the resolution of this case.

### B. *Plaintiff's Expert, H. Boulter Kelsey*

The controversy at issue in this appeal originates with Kelsey's testimony, which led to the comparison testimony that plaintiff now claims was error.

Defendants deposed Kelsey twice during the discovery phase of the case. Prior to his first deposition, Kawasaki learned that Kelsey had been retained as a consultant by Artco, a domestic ATV manufacturer that produces a line of ATVs called Arctic Cats. Defendants questioned Kelsey about his consulting activities and whether he had formed the opinion that the Arctic Cat ATVs were dynamically stable. Kelsey refused to divulge this information, claiming it to be proprietary in nature.

Kelsey did testify at his deposition that he had not found an ATV that was reasonably safe and it was possible that he would find all ATVs defective and unreasonably dangerous. Defendants filed a motion *in limine* seeking to preclude any testimony of Kelsey's consulting activities because of his refusal to provide Kawasaki with that information during discovery. The trial court reserved ruling on the motion until trial.

The issue surrounding Kelsey's Artco consulting work developed further when, shortly before trial in this case, Kelsey was deposed in a unrelated Kentucky state court case, Harris v. Yamaha Motor Corp. U.S.A., No. 95—CI—00021 (Calloway Circuit Court, Commonwealth of Kentucky) (hereinafter Harris). During that deposition, Kelsey testified that all Arctic Cat ATVs were dynamically stable and nondefective as to stability. Neither plaintiff nor Kelsey disclosed this testimony to defendants. Defendants obtained a copy of Kelsey's Harris testimony before trial and, rather than disclosing it to plaintiff, reserved it for potential impeachment.

Kelsey testified in plaintiff's case in chief. He concluded that the incline at the accident site was 31 degrees. Kelsey also testified regarding the Kawasaki ATV's center of gravity, pitch stability, and tire traction, all of which led to his opinion that it was unsuitable for its

intended use when climbing hills. In addition, Kelsey believed the warnings on the Kawasaki ATV were inadequate and failed to warn an inexperienced driver of the dangers involved.

Upon inquiry from plaintiff's counsel, Kelsey acknowledged his consulting work for Artco and gave examples of other litigation-related ATV testing in which he had been involved. Kelsey testified that the other ATVs he had tested were "quite similar" to the Kawasaki ATV with regard to center-of-gravity stability. He also laid the foundation for Statler's testimony regarding the CPSC's determination that ATVs posed an imminent hazard. Kelsey testified that he was familiar with the CPSC findings and that the Kawasaki ATV was substantially similar, in terms of stability, to the four-wheel ATVs examined by the CPSC. Statler eventually testified that he shared the opinion of the CPSC, concluding that all four-wheel ATVs were imminent hazards and posed unreasonable risks for injury.

During cross-examination, defendants attempted to impeach Kelsey with his Harris testimony. Defendants argue that Kelsey's testimony finding Arctic Cat ATVs dynamically stable was inconsistent with his opinions rendered at the depositions in this case that all four-wheel ATVs are defective and unreasonably dangerous. Further, defendants claim this inconsistency calls into question Kelsey's motivation for testifying, i.e., bias and financial incentive. Finally, defendants assert that Kelsey's testimony that Arctic Cat ATVs were stable afforded them an opportunity to apply the same engineering standards to the Kawasaki ATV that Kelsey had used when he concluded that the Arctic Cat was dynamically stable. Defendants utilized Kelsey's standards with the Arctic Cat to demonstrate to the jury that the Kawasaki ATV was also dynamically stable.

Responding to the defendants' challenges, Kelsey stated that even if he could not make specific center-of-gravity comparisons between the Arctic Cat and the Kawasaki ATV, he still considered the Arctic Cat to be stable and the Kawasaki ATV unstable. He opined that even if the center-of-gravity measurements were equal between the two ATVs, the Kawasaki ATV was unreasonably dangerous because the tires used on the Kawasaki ATV had a higher coefficient of friction, which prevented it from being dynamically stable.

During trial, plaintiff filed a motion in limine attempting to exclude defense witness testimony comparing the Kawasaki ATV to the Arctic Cat ATVs. Plaintiff also sought to exclude testimony from defense expert Robbins concerning ATV center-of-gravity locations as they relate to safety. Defendants intended to utilize Robbins' testimony to rebut Kelsey's comparison testimony and his conclusion that the Kawasaki ATV was defective and unreasonably dangerous.

After hearing arguments, the circuit court permitted defense experts to rebut Kelsey's comparison testimony. Defendants proceeded to rebut Kelsey's recently discovered opinions and also his opinions that the Kawasaki was defectively designed and unreasonably dangerous.

## C. *Defense Expert Ron Robbins*

Robbins was defendants' first expert to rebut Kelsey's conclusions. While the court did place limits on Robbins' testimony, he was allowed to testify as to design comparisons between the Arctic Cat and the Kawasaki ATV. Robbins testified regarding the center-of-gravity measurements for Arctic Cat ATVs. He concluded that the center of gravity of the Arctic Cat was higher than the Kawasaki ATV, making it more prone to roll over. Robbins also rebutted Kelsey's comparative analysis with respect to the tires on each machine by testifying that there was no difference in the traction of the tires used on either ATV.

## D. *Defense Expert Kevin Breen*

Breen testified that the Arctic Cat 300, most closely resembling the Kawasaki ATV, had a higher center of gravity than the Kawasaki ATV. Breen also determined that, contrary to Kelsey's assertion, the tires for the Arctic Cat 300 had a higher coefficient of friction than the tires used on the Kawasaki ATV.

## II. ANALYSIS

### A. *Permitting the Defendants' Rebuttal Testimony was not an Abuse of Discretion*

■ The admissibility of evidence is a matter for the discretion of the trial court and its decision will not be reversed unless that discretion has been clearly abused. *Leonardi v. Loyola University*, 168 Ill. 2d 83, 92, 658 N.E.2d 450, 454-55 (1995). Both parties claim that they were ambushed at trial. Plaintiff claims that defendants improperly elicited comparison testimony on cross-examination of Kelsey, knowing that they could then attempt to impeach Kelsey with his testimony in the Harris case. Plaintiffs also claim that defendants twisted Kelsey's cross-examination testimony into an opportunity to use previously undisclosed opinions from their own experts concerning comparisons of other ATVs and the Kawasaki ATV.

Defendants, on the other hand, claim that they were sandbagged when Kelsey refused to answer their deposition questions concerning his consulting work for Artco and then rendered contradictory testimony in the Harris case without disclosing that fact. Defendants justify the rebuttal testimony from their own experts on the theory that plaintiff "opened the door" to the comparison testimony with his experts, Kelsey and Statler.

■ Plaintiff (or at least plaintiff's expert) *and* defendants contributed to the confusion surrounding what expert opinions were to be given at trial and the scope of those opinions. We begin with the basic premise that the goal of Illinois' discovery process is full disclosure. *Buehler v. Whalen*, 70 Ill. 2d 51, 67, 374 N.E.2d 460, 467 (1977); 166 Ill. 2d R. 201(b)(1). Discovery is not a tactical game; rather, it is intended to be a mechanism for the ascertainment of truth, for the purpose of promoting either a fair settlement or a fair trial. *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 282, 433 N.E.2d 253, 257 (1982).

More specifically, the purpose of the discovery rules requiring timely disclosure of expert witnesses and their opinions is to avoid surprise and to discourage tactical gamesmanship. See *Warrender v. Millsop*, 304 Ill. App. 3d 260, 269, 710 N.E.2d 512, 519 (1999) (discussing Supreme Court Rule 213).

While we see nothing in the record to indicate either party consciously subverted the discovery rules in an effort to gain unfair tactical advantage, both parties engaged in a certain amount of gamesmanship. Plaintiff wanted to have his cake and eat it too. He elicited Kelsey's opinions relating to the Kawasaki ATV, comparisons with other models, and the CPSC findings. However, he wanted to preclude defendants from impeaching Kelsey with the Harris testimony and exclude defense expert opinions testing Kelsey's findings by comparing the Arctic Cat ATVs to the Kawasaki ATV.

Defendants, on the other hand, withheld Kelsey's Harris testimony and benefitted from its impeachment value. With respect to their own experts, if defendants had their way, they would have been able to admit into evidence even more previously undisclosed opinions than the circuit court ultimately allowed. Here, the circuit court was burdened with the task of determining what evidence would be admitted amidst the parties' repeated claims of inadequate disclosure and unfair surprise.

Although plaintiff complains that defendants should not have been permitted to elicit testimony comparing various ATV models to the Kawasaki ATV, plaintiff opened the door to the comparison testimony through Kelsey. Kelsey testified on direct examination concerning his consulting activities, comparative analysis of other ATVs, and the similarity between the Kawasaki ATV and those found imminently hazardous by the CPSC. While plaintiff's scope of comparison testimony with Kelsey was limited, he did "open the door" to defense cross-examination and rebuttal testimony. *Hamrock v. Henry*, 222 Ill. App. 3d 487, 495, 584 N.E.2d 204, 210 (1991) (cross-examination on otherwise nonpermissible topics allowed where plaintiff "opened the door").

■ Plaintiff also objected to defendants' use of the Harris testimony, but the circuit court permitted defense counsel to continue with the questioning. The latitude afforded in cross-examination is within the discretion of the circuit court, reversible only for a clear abuse of discretion resulting in manifest prejudice to a party. *Creighton v. Thompson*, 266 Ill. App. 3d 61, 69, 639 N.E.2d 234, 239 (1994). The fact that Kelsey may have been impeached during cross-examination is not by definition "prejudicial." *Mielke v. Condell Memorial Hospital*, 124 Ill. App. 3d 42, 46, 463 N.E.2d 216, 220-21 (1984). In fact, the principal safeguard against errant expert testimony is the opportunity of opposing counsel to cross-examine, which includes the opportunity to probe bias, partisanship, or financial interest. It is important to bring to the jury's attention facts that may discount the credibility of an expert's testimony. *Creighton*, 266 Ill. App. 3d at 69, 639 N.E.2d at 239.

The defense tactic of pointing out specific inconsistencies with Kelsey's testimony was proper. Utilizing their own experts to rebut Kelsey's testimony with opinions that were not specifically disclosed went a step further.

Plaintiff argues that it was error for the circuit court to permit Robbins and Breen to testify comparing the Arctic Cat ATVs and the Kawasaki ATV since those opinions had not been specifically disclosed. In supplemental Rule 213 disclosures (177 Ill. 2d R. 213), defendants noted that Robbins and Breen might be called to rebut "the theories and positions espoused by plaintiff's liability experts and perhaps other matters relevant to the material issues in the lawsuit." Plaintiff argues that these disclosures are not specific enough to encompass the comparison testimony tendered at trial. Defendants respond that they could not be more specific given the impossibility of knowing whether Kelsey would alter his expert opinions at trial.

■ Litigants have an obligation, under Rule 213(i) (177 Ill. 2d R. 213(i)), to disclose the testimony of their experts, even when that testimony responds to the theories of opposing experts. The trial court had the discretion to bar the testimony of defendants' experts. Nevertheless, in the unusual facts of this case, where plaintiff's expert refused to respond to relevant questions during discovery and gave conflicting testimony in another trial shortly before this trial, there is merit to defendants' argument they were uncertain how Kelsey would testify at trial. The trial court had the discretion to conclude that both parties were at fault and to fashion the remedy, which it did.

■ Both parties complained of ambush and unfair surprise. The circuit court considered both plaintiff's and defendants' positions. In fact, during one of the motion *in limine* hearings, the circuit court

specifically noted that while both parties claim to have been sandbagged in this case, the court felt "continually ambushed" by the parties' bickering over claims of inadequate disclosure, improper scope of examination, *et cetera*. The circuit court could have excluded or severely limited the scope of the expert testimony in this case. Instead, the circuit court permitted the majority of the proposed testimony to be presented to the jury, and the jury found for the defendants. The circuit court's decision was not an abuse of discretion.

## B. *The Assumption of Risk Jury Instruction was not an Abuse of Discretion*

■ Plaintiff's second argument is that the circuit court erred in allowing an assumption of risk jury instruction. We disagree. Initially, we note that the record before us does not contain the transcript from the jury instruction conference. Before a party can raise an issue on appeal contesting certain jury instructions, he must provide the reviewing court with the content of the instruction conference establishing that he raised the argument that he advances on appeal or else he is barred. *Brown v. Decatur Memorial Hospital*, 83 Ill. 2d 344, 350, 415 N.E.2d 337, 339-40 (1980). In any event, the assumption of risk instruction was proper as within the circuit court's discretion. *Snyder v. Curran Township*, 281 Ill. App. 3d 56, 65, 666 N.E.2d 818, 825 (1996) (rulings on jury instructions will only be reversed if the record shows an abuse of discretion).

■ Plaintiff acknowledges that in Illinois "[a]ll that is required to justify the giving of an instruction is that there be some evidence in the record to justify the theory of the instruction." *Leonardi*, 168 Ill. 2d at 101, 658 N.E.2d at 459. This rule applies to assumption of risk instructions in product liability cases as well. See *Cleveringa v. J.I. Case Co.*, 230 Ill. App. 3d 831, 852-53, 595 N.E.2d 1193, 1208-09 (1992).

■ The test for assumption of risk is a subjective one that allows the jury to consider the individual plaintiff's knowledge, experience, and background in determining whether he has assumed the risk of using a product known by him to be dangerous. *Thomas v. Kaiser Agricultural Chemicals*, 81 Ill. 2d 206, 213-14, 407 N.E.2d 32, 36 (1980). In a wrongful death case based on strict liability, the affirmative defense of assumption of risk requires proof of a deliberate decision by the decedent to encounter a known risk or a willingness on the part of the decedent to take a chance. *Hanlon v. Airco Industrial Gases*, 219 Ill. App. 3d 777, 784, 579 N.E.2d 1136, 1141 (1991). A jury is permitted to assess decedent's assumption of risk based on circumstantial evidence such as decedent's knowledge and understanding, as well as the obviousness of the defect and the danger it poses. *Williams v.*

*Brown Manufacturing Co.*, 45 Ill. 2d 418, 430-31, 261 N.E.2d 305, 312 (1970).

Here, the facts justified the assumption of risk instruction. The Kawasaki ATV's "on-product" warning labels specifically informed the rider of the potential for rollovers. The warning label stated, "**THIS VEHICLE CAN BE HAZARDOUS TO OPERATE**. A collision or rollover can occur quickly, even during routine maneuvers such as turning and driving on hills or over obstacles, if you fail to take proper precautions." (Bold in original.) In addition, Biggerstaff told Vandiver to "take it easy until [you] get the feel of the vehicle ***; there [are] a few hills that [you can] play around on but take it easy." Further, a lower-inclined hill was adjacent to the accident-site hill and would have allowed Vandiver to exit the strip mine pit. Thus, the jury was free to infer that, despite warnings, Vandiver voluntarily took the riskier option to climb the steeper hill and that his choice led to the accident.

As an additional basis for objecting to the instruction, plaintiff claims that Vandiver was a "young man with very limited experience, limited intelligence, limited education, and limited knowledge." However, the trial testimony indicated that Vandiver was typically a cautious person and was familiar with the operation of machinery. Vandiver had spent six years in the Army and was 26 years old at the time of the accident. This evidence would allow the jury to conclude that Vandiver had sufficient capacity to conclude that the Kawasaki ATV was capable of overturning on a steep hill.

Finally, evidence supported the conclusion that the danger of overturning the Kawasaki ATV on the accident-site hill was obvious, justifying a jury determination that Vandiver must have appreciated the danger involved and consciously proceeded. Defense experts demonstrated the steepness of the accident hill by using a mechanical-tilt table and an exemplar Kawasaki ATV. The exemplar was placed on the table and elevated to 31 degrees to demonstrate the incline of the hill Vandiver attempted to climb. In addition, Biggerstaff testified that it took "gumption" when he first climbed the hill. He had to lean way over the handlebars to keep the balance of the weight forward on the Kawasaki ATV, preventing it from overturning. This type of circumstantial evidence supports the circuit court's decision to allow the assumption of risk instruction.

## III. CONCLUSION

Based upon the foregoing reasons, we affirm the jury verdict in favor of defendants. The circuit court did not abuse its discretion in permitting the defense to utilize comparison testimony rebutting

plaintiff's experts' opinions. It was also within the circuit court's discretion to give the assumption of risk jury instruction.

Affirmed.

McCULLOUGH and MYERSCOUGH, JJ., concur.