FIRST DIVISION 

September 29, 2000 

No. 1-99-3940

CATHERINE JO COPELAND, 

Plaintiff-Appellee, 

v.

STEBCO PRODUCTS CORPORATION,

Defendant and Third-Party Plaintiff-Appellant

(Jiun Long Metal and Industrial Company, 

Third-Party Defendant-Appellee).

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court of Cook County

Honorable 

James S. Quinlan, Jr.,

Judge Presiding.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:
 

Plaintiff, Catherine Jo Copeland, brought this action against defendant, Stebco Products Corporation (Stebco), for an eye injury she sustained while using a portable luggage carrier.  Plaintiff's second amended complaint alleged causes of action for negligence and product liability against Stebco.  Just before trial, the plaintiff voluntarily dismissed her negligence claim and consolidated the remaining two counts of her complaint into a single product liability count.  Stebco denied the allegations and asserted the affirmative defense of assumption of the risk.  Stebco also filed a third-party complaint against Jiun Long Metal & Industrial Co.  (Jiun Long).  Jiun Long filed an answer to the third-party complaint but did not appear or participate in the trial.  The jury found for the plaintiff and awarded the plaintiff $3,023,000.

On appeal, defendant contends that: (1) plaintiff violated Supreme Court Rule 213 (166 Ill. 
2d R. 213) in failing to disclose all of its expert's previously performed tests and measurements on the alleged defective product and a new trial is warranted; (2) plaintiff’s counsel made improper and prejudicial comments during closing argument; (3) the trial court erred in directing a verdict for the plaintiff as to the affirmative defense of assumption of risk; (4) the cumulative errors warrant a new trial; and (5) defendant is entitled to a judgment notwithstanding the verdict or, in the alternative, a new trial on its third-party complaint seeking contribution against Jiun Long.  We reverse and remand for a new trial.

TRIAL TESTIMONY

At trial, Catherine Copeland demonstrated for the jury how she placed her suitcase on the

luggage carrier and put her briefcase on top.  She hooked the bungee cord on the bottom horizontal tube of the carrier and was pulling up on the cord, trying to hook it on the middle bar on the carrier.  As she was leaning over the carrier and pulling the bungee cord upwards, the portion of the bungee cord she had hooked on the bottom of the carrier came off and hit her in her eye.

At the time of her injury she was working on her doctorate in education and had a bachelor's degree in elementary education, a master's degree in curriculum instruction, and a reading specialist degree.  She taught children ranging from kindergarten to sixth grade.  She returned to the classroom but had difficulty, and after trying for six years, she left teaching.  As a result of the injury she wears many different types of glasses for reading, driving, watching television and for double vision.  Also, her pupil is enlarged, her eyelid droops and her iris is a different color.

Edward Stein, president of Stebco, testified that the luggage carriers were purchased by Stebco from Jiun Long.  No instructions or warnings are provided with the luggage carriers, and Stebco does not make any recommendations regarding safe or unsafe ways to use the carrier.  Stein stated that the manner in which Catherine Copeland hooked the bungee cord was proper and safe.  He reviewed the quality and reputation of Jiun Long products and selected the luggage carrier as one of the products from Jiun Long that Stebco put on the market.

Stebco's expert died before his evidence deposition could be taken, and as a result, Stebco produced no expert witness testimony at trial.

Dr. Holecamp, plaintiff's treating physician, described her injuries as a severe corneal abrasion and contusion injury to the cornea accompanied by severe hemorrhage in the anterior portion of the eye called a hyphema.  Plaintiff has had limited success with several surgical procedures and she experiences a permanent loss of depth perception and field of vision, and the vision in her injured eye corrected is only 20/200.

Dennis Brickman, a mechanical engineer, was plaintiff's expert witness.  At trial Brickman testified that the luggage carrier is unreasonably dangerous because the bungee cord can achieve a release geometry, which can contact or strike the user in the face.  He testified that he had performed tests or experiments to demonstrate the release geometry where the bungee cord hook could release from the bottom of the cart and have a rebound path up toward the user.

In August 1995,  Brickman  made a videotape after plaintiff demonstrated how she used the luggage cart at the time that she was injured.  Despite not recalling all the details of the accident, plaintiff indicated that she was pulling the bungee cord upwards when the hook on the bottom came off and struck her in the eye.  The purpose of Brickman's video was to demonstrate the various ways that release or escape geometry could occur involving the bottom hook.  The escape geometry, in turn, helped Brickman explain how the hook could separate from the bottom portion of the luggage cart, project into the air, and strike a user.  The video contained eight demonstrations of escape geometry illustrating the different ways the bungee cord hook could separate from the bottom rung of the cart.  

Brickman gave his discovery deposition in May 1998, during which defense counsel questioned Brickman about his videotaped demonstrations.  At trial on cross-examination Brickman testified as to work that he did after his deposition, including additional tests and measurements that were not disclosed to the defendant before Brickman's trial testimony.  Defense counsel objected to Brickman's answers to his cross-examination because the answers revealed that Brickman had undertaken additional testing and measurements as well as produced a videotape since his deposition, none of which had been disclosed to defense counsel.  The defense made a motion for mistrial.

Counsel for plaintiff explained that Brickman had performed additional tests and measurements and made an additional videotape after Stebco's expert's deposition.  The additional testing and measurements by Brickman were undertaken because Stebco's expert criticized Brickman on the issue of whether Brickman had successfully achieved a release of the bungee cord while keeping the cord within the vertical confines of the handle.  However, since Stebco's expert died before giving an evidence deposition, counsel for plaintiff did not question Brickman during direct examination regarding the additional demonstration, measurements, tests and videotape.  

The court ruled that the testimony regarding subsequent testing would be stricken with respect to pulling the cord up.  The court refused to strike the testimony regarding the new angle measurements, but barred any use of the undisclosed videotape.  The court concluded that the expert could testify that escape geometry could be achieved by pulling the cord through the handle, but not that he did further tests.  The court stated that Brickman would be prevented from stating any other opinions based upon the undisclosed additional testing and from using the tape.  The defense motion for mistrial was denied.

At the close of the evidence, the trial court directed a verdict in favor of the plaintiff and against the defendant on the affirmative defense of assumption of risk.  The trial court also ruled that defendant had no duty to warn.  The jury was instructed solely on the theory of strict liability for the defective design of the luggage cart.  During closing arguments, plaintiff’s attorney referred to the Rachel Barton case.  The trial court sustained defendant’s objection to counsel's reference to the Rachel Barton case.  However, defendant moved for a mistrial which was denied. The jury returned a verdict of $3,023,000 in favor of plaintiff and apportioned fault on the third-

party claim of contribution with 60% to Stebco and 40% to Jiun Long.  

ANALYSIS

                       I. Did Plaintiff's Failure to Disclose Violate Supreme Court Rule 213?

Defendant argues that plaintiff's violation of Rule 213 denied defendant a fair trial and the trial court should have declared a mistrial after Brickman testified to the jury about undisclosed tests on the luggage carrier.  Plaintiff claims there was no Rule 213 violation because her expert's opinion did not change following the undisclosed tests and measurements.  Admission of evidence pursuant to Rule 213 is within the trial court's discretion and the court's ruling will not be reversed absent an abuse of discretion.  
Department of Transportation v. Crull
, 294 Ill. App. 3d 531, 537 (1998). 

We begin with the basic premise that the goal of the discovery process in Illinois is full disclosure.  
Buehler v. Whalen
, 70 Ill. 2d 51, 67 (1977).  Supreme court rules on discovery are mandatory rules of procedure that courts and counsel must follow.  
Warrender v. Millsop
, 304 Ill. App. 3d 260, 265 (1999).  "Discovery is not a tactical game; rather, it is intended to be a mechanism for the ascertainment of truth, for the purpose of promoting either a fair settlement or a fair trial."  
Boland v. Kawasaki Motors Manufacturing Corp., USA
, 309 Ill. App. 3d 645, 651 (2000).  More specifically, the purpose of the discovery rules requiring timely disclosure of expert witnesses and their opinions is to avoid surprise and to discourage strategic gamesmanship.  
Warrender
, 304 Ill. App. 3d at 269.  

Supreme Court Rule 213 requires that, upon written interrogatory, a party must disclose the subject matter, conclusions, opinions, bases for the opinions, qualifications, and all reports of a witness who will offer any opinion testimony and seasonably supplement any previous answers when additional information becomes known.  166 Ill. 2d R. 213; 
McGrew v. Pearlman
, 304 Ill. App. 3d 697, 705 (1999).  Subsections (g) and (i) provide as follows:

"(g) Opinion Witness.  An opinion witness is a person who will offer any opinion testimony.  Upon written interrogatory, the party must state:

(i) the subject matter on which the opinion witness is

expected to testify;

(ii) the conclusions and opinions of the opinion

witness and the bases therefor; and

(iii) the qualifications of the opinion witness; and

provide all reports of the opinion witness.

* * *

(i) Duty to Supplement.  A party has a duty to seasonably supplement or amend any prior answer or response whenever new or additional information subsequently becomes known to that party."  166 Ill. 2d Rs. 213(g),(i).

The committee comments to Rule 213 state that one of the purposes of Rule 213 is to avoid surprise: 
"It is the Committee's belief that in order to avoid surprise, the subject matter of all opinions must be disclosed pursuant to this rule and Supreme Court Rule 218, and that no new or additional opinions will be allowed unless the interests of justice require otherwise."  166 Ill. 2d R. 213(g), Committee Comments.  The express language of Rule 213 additionally imposes an obligation on a party to supplement discovery whenever new or additional information becomes known to that party.  166 Ill. 2d R. 213(i).  Therefore, Rule 213 is mandatory and strict compliance is required.  
Crull
, 294 Ill. App. 3d at 537; 
Adami v. Belmonte
, 302 Ill. App. 3d 17 (1998).  Litigants have an obligation, under Supreme Court Rule 213(i), to disclose the testimony of their experts, even when that testimony responds to the theories of opposing experts.  166 Ill. 2d R. 213(i); 
Boland
, 309 Ill. App. 3d at 652.  

With these considerations in mind, we determine whether plaintiff's failure to disclose the new tests her expert witness conducted after his deposition, the conclusions from those tests and the new measurements violated Rule 213.  Defense counsel's theory for trial based on the information disclosed by plaintiff prior to trial, including Brickman's deposition was that Brickman could not verify that the accident occurred in the manner described by plaintiff.  It was critical to the defense of this case that Brickman had not determined at what angle the cord had to be pulled to achieve release of the hook from the bottom of the cart and that Brickman had not achieved escape geometry when the cord was pulled in a manner consistent with the testimony of the plaintiff.  Brickman gave his deposition in May 1998 during which defense counsel specifically questioned him about whether he could determine the angle of the bungee cord in order to achieve escape geometry.  Brickman answered: "I don't recall specifically undertaking that assignment."

Further referencing the manner in which plaintiff described her actions at the time of the accident, defense counsel during the deposition then asked Brickman if he had demonstrated the movement of the cord or the pull on the cord while the cord was within the confines of the two vertical members that support the handles.  Brickman again stated that he had not performed such a demonstration.  Defense counsel next asked Brickman whether he achieved escape geometry by pulling the cord straight up when it was attached to the lower center portion of the bar.  Brickman replied that he did not.  He also testified that he had no plans to do any further work and that he had not recommended that any further work be done.  Based on Brickman's deposition testimony, defense counsel prepared for trial believing that Brickman had not achieved escape geometry by pulling the bungee cord in the manner consistent with the plaintiff's testimony.  Therefore, defense counsel's theory for trial was that Brickman could not verify that the accident occurred in the way that plaintiff said it did.

At trial, however, during cross-examination Brickman changed the facts that defense counsel relied upon for his theory of defense.  He disclosed for the first time, a test or demonstration he performed following his deposition, that verified the accident could occur in the way described by the plaintiff.  The following exchanged occurred between Brickman and defense counsel:

"DEFENSE COUNSEL: Q. Am I correct in order to demonstrate that with this tilted up, you have to pull it away from what would be vertical?

BRICKMAN: A. To some degree, not to the extent you were just demonstrating.

DEFENSE COUNSEL: Q. Well, if you started in the middle, if you started with it [the hook] more or less in the middle like Ms. Copeland testified to, am I correct that if you stayed within the boundaries of this handle in the back, if you stayed within those boundaries, started it more or less in the middle and had it tilted back, that you would never get release geometry?

BRICKMAN: A. That is absolutely incorrect.

DEFENSE COUNSEL: Q. How would you get it?

BRICKMAN: A. You can get the same exact release geometry around the corner while the hook which is in our hand is still within the vertical uprights of the handle.

DEFENSE COUNSEL: Q. By placing and starting it in the middle?

BRICKMAN: A. Yes.

DEFENSE COUNSEL: Q. What would be the force pulling it to the side?

BRICKMAN: A. It would be a hand.

DEFENSE COUNSEL: Q. A hand?

BRICKMAN: A. Yes, like your right hand, just like he is demonstrating in the video there.

DEFENSE COUNSEL: Q. Well, I can get it to do it, I can get it to come off, but I can’t,...can you come down here and demonstrate?

BRICKMAN: A. No, but I have done the demonstration.

* * *

DEFENSE COUNSEL: Q. I think I might have passed it by.  This is the first series 1,2,3.  My point is that each time this angle here is off just about the corner just about here, right?

BRICKMAN: A. Approximately.

DEFENSE COUNSEL: Q. And that's when it is placed right at the corner, and you are saying that you could develop one so that you could pull it here, it would come off even staying within the bounds of this hand?

BRICKMAN: A. Yes.

DEFENSE COUNSEL: Q. The angles in terms of this movement off to the side were never measured or indicated or are they anywhere in your records?

BRICKMAN: A. I measured them off the videotape.

DEFENSE COUNSEL: Q. You actually have measurements of them?

BRICKMAN: A. Yes.

DEFENSE COUNSEL: Q. The last series?

BRICKMAN: A. Yes.

DEFENSE COUNSEL: Q. Off of the perpendiculars?

BRICKMAN: A. Yes.

DEFENSE COUNSEL: Q. What are those angles?

BRICKMAN: A. It's approximately between 2 and 8 degrees.

DEFENSE COUNSEL: Q. 2 and 8 degrees away from?

BRICKMAN: A. Vertical.

* * *

DEFENSE COUNSEL: Q. I will just revisit one point with you.  We were talking about it before.  I think I understand your answer, but attaching this cord on the LC2 to the middle of the bar, am I correct that you have told us that or am  I correct that you never actually achieved escape velocity or escape geometry pulling straight up within the boundaries of the handle of the LC2?

BRICKMAN: A. I have achieved escape geometry in the method that you described."

As the result of Brickman testifying to the fact that he had performed additional measurements and achieved escape geometry which was in direct contradiction to the previously sworn testimony given in his deposition, defense counsel impeached him with his previous deposition testimony as follows:

"DEFENSE COUNSEL: Q. Let me refer you to the deposition then, Mr. Brickman.  This is on page 63 if you want to refer to it...this was the question and answer.  Am I correct that you were not – you never achieved any escape geometry by simply pulling the cord straight up when it is pulling straight up parallel with the lines of the cart over the luggage to the handle on top?

There was an objection by counsel, and then your answer was: With respect to this cart, I believe that would be correct.

Is that your answer?

BRICKMAN: A. That was my answer at that time.  I have done work since that time since my deposition."

The defendant objected to the testimony regarding these undisclosed measurements and tests and requested a mistrial which was denied.  Plaintiff does not dispute the fact that Brickman continued his work on the case after his deposition and conducted new tests.  Plaintiff also does not dispute that these new tests and the conclusions Brickman reached based on these tests were never disclosed to defense counsel.  Plaintiff does not contest the fact that since his deposition Brickman measured angles in terms of the vertical movement of the bungee cord as it was pulled upwards.  Plaintiff does not contest that Brickman made new measurements off the videotape.  Plaintiff does not contest that the measurements and the new videotape were never disclosed to defense counsel.  Plaintiff contends, however, that Brickman never changed his opinion after the deposition and that his undisclosed tests and measurements confirmed his previously disclosed opinions about the unsafe condition of the luggage carrier.  According to plaintiff, during Brickman's deposition and at trial, Brickman consistently stated that the luggage cart in this case was unreasonably dangerous because of the open-ended hook that could be attached to the bottom bar.  Plaintiff claims that because her expert's opinion about the design defect in the luggage cart did not change following the undisclosed tests and measurements, there was no violation of Rule 213. 

Plaintiff 's argument misinterprets the strict disclosure requirements of Rule 213.  A party must disclose not only the specific opinion of his expert but the bases of that opinion. 
 Crull
, 294 Ill. App. 3d at 538-39.  Plaintiff further argues that the
 additional tests and measurements done by Brickman after the deposition were in response to the criticism Brickman received from defendant’s expert witness.  Defendant’s expert witness criticized Brickman on the issue of whether Brickman had successfully achieved a release of the bungee cord while keeping the cord within the vertical confines of the handle.  Plaintiff argues that in anticipation of defendant’s expert testimony at trial, Brickman did additional testing to see whether he could achieve escape geometry in that manner.  He made a videotape of his efforts and also made additional measurements.  However, the death of defendant’s expert witness made the "rebuttal" testimony by Brickman unnecessary.  Plaintiff argues that because Brickman's additional tests and measurements were only relevant to rebut defendant's expert, once defendant decided not to call an expert witness, she was not required to disclose this new evidence. 

The court in 
Boland
 rejected a similar argument.  The court held that litigants have an affirmative obligation under Rule 213 to disclose testimony that responds to theories of opposing experts.  
Boland
,
 
309 Ill. App. 3d at 652.  While the appellate court in 
Boland
 determined that the trial court had not abused its discretion in allowing into evidence previously undisclosed opinions, the court reached that conclusion based on the facts that both parties engaged in gamesmanship, sought to obtain unfair tactical advantage, and violated Rule 213.  The court found that the trial court’s remedy was appropriate for the circumstances of that case.  
Boland
, 309 Ill. App. 3d at 647.  However, consistent with the mandatory disclosure requirements of Rule 213, 
Boland
 makes it clear that, even if a party believes that some of the bases of his expert's opinion are only relevant to rebut an opposing expert's opinion, the party still must disclose these bases before trial. 
Boland
, 309 Ill. App. 3d at 652.

Plaintiff further points out that, although she never supplemented the interrogatories, she never sought admission of the new information either.  She argues that the information came out due to the cross-examination by defense counsel.  Plaintiff fails to cite to any authority to support the proposition that her failure to supplement the interrogatories with the new tests and information is excused, because the information was elicited during cross-examination.  The error here was caused by the plaintiff's failure to disclose her expert's post-deposition tests and measurements, not by the questions posed by defense counsel.  Defense counsel based his cross-

examination on information previously disclosed.  The duty to supplement any new or additional opinion or bases that subsequently become known to a party is mandatory regardless of whether opposing counsel intends to cross-examine on the new information.  
Seef v. Ingalls Memorial Hospital
, 311 Ill. App. 3d 7, 21-22 (1999).  Defense counsel prepared his case, prepared cross-

examination, conducted cross-examination and presented a theory of defense relying on the disclosures made by plaintiff.  In doing so he specifically relied on the previous sworn testimony of plaintiff's expert, including the fact that plaintiff's expert had not been able to achieve escape geometry by pulling the bungee cord in a manner consistent with plaintiff's testimony and therefore could not verify that the accident occurred in the way that plaintiff described.  

Plaintiff argues that 
Conners v. Poticha
, 293 Ill. App. 3d 944 (1997), supports her contention that she did not violate Rule 213. 
 We find 
Conners 
distinguishable.  In 
Conners
, the defendant’s expert witness, when questioned on cross-examination, offered additional reasons and examples, not previously disclosed, to explain his theory on causation.  Applying former Rule 220 (134 Ill. 2d R. 220), the appellate court determined that the record indicated that the defendant’s expert’s opinions rendered in pretrial interrogatories and depositions were consistent with his opinions offered at trial.  
Conners
, 293 Ill. App. 3d at 951.  The court pointed out that the expert at trial expressed his theories in more "precise terms," and his testimony represented "an elaboration or refinement" of the expert's well-established theory on causation. 
 Conners
, 293 Ill. App. 3d at 950.  The court also found that the expert's examples and reasons not previously disclosed were within the "fair scope" of facts known and opinions disclosed before trial. 
 Conners
, 293 Ill. App. 3d at 951. 

Here, unlike 
Conners
, the undisclosed bases for Brickman's opinion at trial concerning the escape geometry were not within the scope of the original bases given during the deposition. 

In fact, according to Brickman's deposition he had not achieved escape geometry by pulling the bungee cord in a manner similar to that described by plaintiff, but by trial the exact opposite was true.  As the result of additional tests after his deposition, he was able to achieve escape geometry consistent with the manner described by plaintiff.  Brickman reached a conclusion based upon tests, measurements and demonstrations conducted after his deposition and never disclosed to defendant before trial.  While in 
Conners
 the expert witness elaborated on opinions that were already disclosed during discovery when questioned on cross-examination, in this case, Brickman did more than elaborate on previous opinions.  Unlike 
Conners
 where the expert's pretrial deposition was consistent with his trial testimony, here Brickman's trial testimony contradicted his deposition testimony.  Based on information disclosed during the discovery process, defense counsel was not expecting Brickman to testify that he was able to achieve escape geometry by "pulling straight up."  The defendant's theory was that the accident did not happen in the manner described by plaintiff.  Significant to that theory was the testimony of the plaintiff's own expert which defense counsel relied upon that he had not actually ever achieved release of the hook under some of the conditions described by the plaintiff and that such a release would require an element such as a "rollout" of which there was no evidence in this case. 

Defense counsel cross-examined Brickman consistent with this theory of defense based on the information disclosed by plaintiff and based on Brickman's sworn deposition testimony.  That information and that testimony indicated that Brickman had not actually achieved escape  geometry by pulling straight up.  To have the expert witness testify that he affirmatively achieved escape geometry in a manner consistent with the plaintiff's testimony was not an elaboration of his previous testimony but rather a critical change in testimony which corroborated the plaintiff's testimony.  Plaintiff's failure to disclose the subsequent tests, measurements, and conclusions of its expert witness was a clear violation of the disclosure requirements of Rule 213.    We find the case of 
Seef v. Ingalls Memorial Hospital
, 311 Ill. App. 3d 7 (1999), 
instructive.  
In that case, the appellate court reversed a jury verdict in favor of the defendant physician in a medical malpractice action and ordered a new trial due to the effect of the erroneous admission of the undisclosed opinions of the defendant's expert. 
 Seef
, 311 Ill. App. 3d at 24.  The appellate court quoted, with approval, the language contained in 
Department of Transportation v. Crull
, that "'Rule 213 establishes more exacting standards regarding disclosure than did Supreme Court Rule 220, * * * which formerly governed expert witnesses.  * * *  Indeed, we believe one of the reasons for new Rule 213 was the need to require stricter adherence to disclosure requirements.'"  
Seef
, 311 Ill. App. 3d at 22, quoting 
Crull
, 294 Ill. App. 3d at 538-39.

We note that in this case the trial court acknowledged that the plaintiff violated the requirements of Rule 213 in failing to disclose the expert's additional tests and his conclusions.  The trial court stated:

"A party has a duty to reasonably supplement or amend any prior answer or response whenever new or additional information subsequently becomes known to that party.  It seems to me that this falls under that paragraph.  * * *  This doesn’t say except when it is going to be by legitimate rebuttal response.  * * *  If he just did additional testing and he didn’t come up with any new opinions or anything like that, then it wouldn’t make any difference, but here he has got changes.  * * *  Technically, you haven’t complied with the first paragraph of [Rule] 213."

The trial court, however, denied defendant’s motion for a mistrial and instead struck the portion of Brickman’s testimony relating to the new testing but not to the measurements.  The court further concluded that the expert could give an answer that escape geometry could be achieved by pulling the cord through the handle, but not that he did further tests.  For the reasons previously discussed, we conclude that plaintiff violated Rule 213 by failing to disclose the new tests, measurements and conclusions.  We next address whether the trial court's ruling was the appropriate remedy for the Rule 213 violations.

II. Did Striking Portions of Expert's Testimony Remedy the Rule 213 Violation?

Whether to declare a mistrial rests within the sound discretion of the trial judge and will not be reversed on appeal unless that decision is a clear abuse of discretion.  
Van Hattem v. 

K mart Corp.
, 308 Ill. App. 3d 121, 129 (1999).  The standard we use to determine if a party's discovery violation warrants a mistrial is whether the violation is of such character and magnitude as to deprive a party of a fair trial and the party seeking the mistrial demonstrates actual prejudice as a result. 
 Bianchi v  Mikhail
, 266 Ill. App. 3d 767, 777 (1994).  This court has listed the following factors as relevant to an assessment of prejudice: (1) the strength of the undisclosed evidence; (2) the likelihood that prior notice could have helped the defense discredit the evidence; (3) the feasibility of a continuance; and (4) the willfulness of the party in failing to disclose.  
Sobczak v. Flaska
, 302 Ill. App. 3d 916, 926 (1998).  

We  find
 that plaintiff's failure to disclose Brickman’s additional measurements, tests and conclusions as to the release geometry substantially prejudiced defendant and denied defendant a fair trial.  A critical issue in this case was whether release geometry could occur consistent with plaintiff's testimony.  In direct contradiction to his deposition testimony, Brickman's trial testimony concluded that the bungee cord hook could become detached from the bottom rung of the cart while a person pulled the bungee cord "straight up within the boundaries of the handle" and that Brickman had successfully achieved release geometry in that manner.  Plaintiff testified that as she pulled the bungee cord upwards the portion of the cord hooked on the bottom came off and hit her in the eye.  Therefore, the undisclosed evidence substantially strengthened plaintiff''s case.  It not only fortified Brickman's opinion about the defect of the luggage cart but corroborated plaintiff's testimony about how the accident occurred.  Plaintiff's failure to disclose the additional tests and result of these tests conducted by her expert undermined the cross-

examination of defendant, which was based on the previous disclosed opinion, tests and measurements of plaintiff's expert.  Defendant prepared his case, chose a theory of defense and conducted his cross-examination of Brickman relying on the belief that Brickman had not successfully achieved release geometry in the manner described by plaintiff as the result of Brickman's previously sworn deposition testimony.

Defendant did not receive notice of the fact that Brickman had achieved release geometry in the manner consistent with plaintiff's testimony until cross-examining plaintiff's expert during trial.  As a result, he had no opportunity to challenge the viability of Brickman’s new conclusions or to cross-examine them in a meaningful adversarial manner.  Brickman's trial testimony was in direct contradiction to his earlier deposition testimony in a critical area.  It is clear that such testimony came as a complete surprise to the defense.  This surprise testimony unfairly undermined the defense strategy and undercut the cross-examination.  The defense strategy was to persuade the jury that the accident did not happen in the manner theorized by the plaintiff.  Critical to that defense strategy was the testimony of plaintiff's own expert that he had not actually ever achieved release of the hook under some of the conditions described by plaintiff.  The plaintiff undermined defendant's trial strategy regarding cross-examination of Brickman and discredited defendant's theory of the case when Brickman testified he had achieved escape geometry in the manner consistent with plaintiff's testimony.   

Moreover, because defendant was unprepared for the surprise testimony defendant was denied a fair opportunity to cross-examine Brickman on his new tests and measurements.

Prior notice would have at least given the defendant an opportunity to discredit Brickman's new tests and measurements.  The defense was deprived of any opportunity to review or analyze the tests and measurements before they were revealed for the first time as the result of cross-

examination.  This is precisely the outcome that Rule 213 seeks to avoid.  Rule 213 is designed to give those involved in the trial process a degree of certainty and predictability that furthers the administration of justice and eliminates trial by "ambush."  
Firstar Bank v. Peirce
, 306 Ill. App. 3d 525 (1999).    

In 
Bianchi
 
v. Mikhail
, 266 Ill. App. 3d at 770
, defense counsel cross-examined the plaintiff's expert by use of a manual that had not been disclosed.  Plaintiff's counsel failed to object but did move for a mistrial the next day.  The trail court denied the motion as untimely.  The appellate court found the denial of the mistrial to be an abuse of discretion.  The court found that a contemporaneous objection would not have been sufficient to cure the prejudice, even if one had been made.  Moreover,  a recess would have been an insufficient opportunity for the plaintiff to review a document that consisted of several hundred pages.  
Bianchi
, 266 Ill. App 3d at 776.  Here a recess would have been an insufficient opportunity for defendant to review or analyze the new tests and measurements.

In this case the trial judge’s efforts to remedy the violation of Rule 213, by striking the portion of the testimony regarding the new tests, did not eliminate the unfair prejudice that resulted.  Moreover, the court allowed testimony that escape geometry could be achieved by pulling the cord through the handle, which corroborated the plaintiff's testimony.  The failure to disclose Brickman's new test, measurements, findings and conclusions gave plaintiff an unfair tactical advantage and allowed for the type of ambush at trial that Rule 213 is intended to prevent.  Once Brickman testified about his undisclosed  tests, measurements, findings and conclusions which corroborated plaintiff's testimony, defendant could no longer receive a fair trial.  Defendant was deprived of the fundamental right to prepare and defend this case.  Under the totality of circumstances the trial court's failure to declare a mistrial was a clear abuse of discretion.  Accordingly, plaintiff's Rule 213 violation requires us to reverse the jury verdict and remand for a new trial.

III.  Was Reference to the Rachel Barton Case Error?

Defendant next argues that references by plaintiff's counsel to the Rachel Barton case during 
voir dire
 and closing argument substantially prejudiced defendant. 
 Although attorneys are generally permitted wide latitude in closing argument, this latitude is not without qualifications. 
 Lauman v. Vandalia Bus Line
s,
 Inc.
,
 
288 Ill. App. 3d 1063, 1071 (1997).  A judgment will be reversed only when the challenged remarks prevent a party from receiving a fair trial.  
Decker v. Domino's Pizza, Inc.
, 268 Ill. App. 3d 521 (1994).  In determining whether an improper closing argument has denied a party a fair trial, we are mindful that the reviewing court gives "considerable deference to the trial court as it is in a superior position to assess the accuracy and effect of the counsel's statements."  
Decker
, 268 Ill. App. 3d at 522.  

We note the $29.6 million verdict in the Rachel Barton case was returned on March 1, 1999 and trial in this case began on April 28, 1999.  Plaintiff's counsel with no objection from defense, questioned prospective jurors as to whether they were prejudiced as to either party by the media coverage of the Rachel Barton case.  All prospective jurors answered that they were not biased, prejudiced or predisposed to either party.  During 
voir dire
 plaintiff's counsel referred to the Rachel Barton case or the violinist case, six times; referred to the $30 million verdict in that case twice; and referred to the leg injury in that case once.  In light of the close proximity of the trial in this case to the verdict in the Rachel Barton case, together with the extensive media coverage of the Rachel Barton case, questions to prospective jurors regarding possible prejudice as the result of the Rachel Barton case were appropriate.  However, plaintiff's reference to the Rachel Barton case in closing argument is more problematic.

The issue is whether the trial court abused its discretion in denying defendant's request for a mistrial or new trial after finding that sustaining defendant's objections to plaintiff's argument cured any prejudice to defendant.  Comments on the evidence during closing argument are proper only if proven by direct evidence or if based on a reasonable inference from the facts.  
Elliott v. Koch
, 200 Ill. App. 3d 1, 19 (1990).  Here, despite no evidence introduced during trial about Rachel Barton's case, plaintiff’s counsel referred to the case 
in closing arguments
 as follows:

"PLAINTIFF'S COUNSEL: Is that a substantial amount of money?  It absolutely is a substantial amount of money.  And under the circumstances of the injury, I don't think that it will take a lot of justification for you to find that to be an appropriate amount of money.

As recently as two or three months ago this community spoke about what a violinist –

DEFENSE COUNSEL: Objection, your Honor.

THE COURT: All right.  I'll sustain objection.

DEFENSE COUNSEL: Thank you.

PLAINTIFF'S COUNSEL: I'll tell you one thing, ladies and gentlemen.  The musician who plays the violin at least can get up every morning and still go play the violin.  

DEFENSE COUNSEL: Objection, your Honor.  We're still talking about a totally different case, a totally different situation.

THE COURT: I'll sustain the objection.

PLAINTIFF'S COUNSEL: I'll change the analogy to a flutist who can still get up every morning without a leg and go do what she loves to do, and that's play the flute. [sic]

An elementary reading teacher who teaches small children every day and has great demands on her to read, to write, to keep track of the demands that go on in a classroom of second and third and fourth graders running around all over cannot continue her loved profession any more than the flutist could if she lost her arm or her hand or her fingers."

As the record reflects, after the trial court sustained two objections during this portion of the closing argument, counsel persisted in comparisons not based on the evidence.  Such remarks are improper as they are based on neither evidence nor reasonable inference from the evidence.  The repetition of the argument after the trial court repeatedly sustained objections served to undermine the fairness of the trial process.  
Kilakowski v. Voris
, 94 Ill. App. 3d 404 (1981).  Such comment should not be repeated on retrial.  The purpose of argument is to draw reasonable inferences from the evidence and assist the jury in fairly arriving at a verdict based on the law and the evidence.  It is error for counsel to appeal to the passions of the jury.  
Hansel v. Chicago Transit Authority
, 132 Ill. App. 2d, 402 (1971).  Counsel must confine closing arguments to matters that are in evidence and to reasonable inferences drawn from the evidence.  The improper appeal to the passions of the jury through repeated reference directly or indirectly to the Rachel Barton case, even after objections were sustained, together with plaintiff's failure to disclose the new tests, measurements, findings and conclusions of plaintiff's expert witness was prejudicial and denied defendant a fair trial.  

IV. Defendant's Remaining Issues      

Defendant's last two issues on appeal challenge: (1) the trial court's decision to grant a directed verdict on defendant's affirmative defense of assumption of risk; and (2) the jury verdict in the third-party action.  These issues will ultimately be resolved based upon the facts established by the evidence upon retrial.  

                                                               CONCLUSION

For the reasons stated above, the judgment of the circuit court is reversed and remanded for a new trial consistent with this opinion.

Reversed and remanded.

TULLY and GALLAGHER, JJ., concur.