2016 IL App (1st) 152036
No. 1-15-2036
Opinion filed June 30, 2016
Modified Upon Denial of Rehearing August 2, 2016

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BRIAN HARWELL, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | No. 13 CH 24479 |
| FIREMAN'S FUND INSURANCE COMPANY OF OHIO and KIPLING DEVELOPMENT CORPORATION, | ) ) ) ) ) | The Honorable Diane J. Larsen, Judge, presiding. |
| Defendants-Appellees. | ) ) | |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Simon concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Brian Harwell appeals from the trial court's grant of summary judgment in favor of defendant Fireman's Fund, Inc., which insured Kipling Development Corporation. A jury found Kipling, as general contractor, negligent in supervising the construction site where Harwell was injured. Fireman's Fund refused to pay damages to Harwell, an employee of a subcontractor, claiming that Kipling had not complied with an endorsement to the insurance policy. Because equitable principles estop Fireman's Fund from asserting that endorsement

against Harwell, we hold that the trial court erred in granting summary judgment for Fireman's Fund and should have granted summary judgment to Harwell.

¶ 2                                    BACKGROUND

¶ 3         In 2006, Kipling was building a home in Will County, Illinois. As general contractor, Kipling hired subcontractors to handle specific aspects of the job, including Speed-Drywall and United Floor Covering. When service technician Brian Harwell entered the site to replace a furnace filter, the stairs leading from the first floor to the basement collapsed beneath Harwell, sending him falling into the basement. Harwell sustained injuries and filed suit against Kipling as the general contractor of the building site. He alleged that Kipling was negligent in failing to properly supervise and direct construction and failing to furnish Harwell with a safe workspace and a safe stairway. Harwell also sued Speed-Drywall and United Floor Covering, alleging they had modified or failed to secure the stairwell. In September 2007, Kipling's attorneys (paid for by Fireman's Fund, as the insurance company had a duty to defend Kipling) filed an answer to Harwell's interrogatories stating that Kipling had liability insurance with Fireman's Fund Insurance Company, and that the maximum liability limit under the policy was $1 million.

¶ 4         Kipling's policy with Fireman's Fund included an endorsement requiring Kipling to obtain certificates of insurance and hold harmless agreements from all subcontractors. If Kipling failed to do so "at the time of an 'occurrence' involving a subcontractor," then Fireman's Fund would pay a maximum of $50,000 for all damages and defense costs due to any "bodily injury" "arising out of any covered acts" of the subcontractor. In 2008, after Kipling's attorneys had answered Harwell's interrogatories, Fireman's Fund sent Kipling a series of letters informing Kipling that, because Kipling had failed to comply with the endorsement, the limits of Fireman's Fund's liability had been reduced to $50,000 from $1 million. Fireman's Fund reiterated this

position in 2011. But Kipling's attorneys (who also represented Fireman's Fund) did not amend the interrogatory answer to reflect this change, and Harwell's attorneys had no knowledge of the change.

¶ 5        In 2012, the matter went to jury trial against only Kipling, with Kipling's defense funded by Fireman's Fund. Harwell argued that the drywall contractor damaged the staircase, while Kipling's counsel argued that the flooring contractor was responsible. Harwell prevailed. The jury found Kipling negligent and awarded $255,186 in damages. (United Floor Covering had been dismissed without prejudice, and Speed-Drywall settled with Harwell for $45,000 (reducing Kipling's damages by that amount)).

¶ 6        Kipling went out of business and had no assets to satisfy the judgment. In 2013, Harwell brought suit for declaratory judgment against Kipling and Fireman's Fund, asking for a declaration that Fireman's Fund's policy on Kipling covered Harwell's damages. In response, Fireman's Fund alleged that the endorsement limited its liability to $50,000, and the $50,000 limit had been reached in paying for Kipling's defense.

¶ 7        Both parties moved for summary judgment. The trial court granted Fireman's Fund's motion.

¶ 8                          STANDARD OF REVIEW

¶ 9        We review a trial court's grant of summary judgment *de novo*. *Argonaut Midwest Insurance Co. v. Morales*, 2014 IL App (1st) 130745, ¶ 14. Summary judgment may be granted where there is no triable issue of material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). Genuine issues of material fact exist where the material facts are disputed or, if undisputed, reasonable persons might draw different inferences from those facts. *Id.*

¶ 10                                ANALYSIS

¶ 11        Years before Harwell asked Fireman's Fund to pay the damages for his accident–indeed, years before Harwell litigated a jury trial to determine Kipling's negligence for the accident– Fireman's Fund had already informed Kipling that it was limiting its liability to $50,000. Yet Kipling's lawyers (paid for by Fireman's Fund, as required by its policy with Kipling), who had earlier told Harwell that the policy limit was $1 million, failed to inform Harwell of this material change in position. This violated Illinois Supreme Court Rule 213(i) (eff. July 1, 2002), which states that "[a] party has a duty to seasonably supplement or amend any prior answer or response whenever new or additional information subsequently becomes known to that party."

¶ 12        Our supreme court has instructed that their rules "are not mere suggestions. Rather, they have the force of law, and the presumption must be that they will be obeyed and enforced as written." *People v. Houston*, 226 Ill. 2d 135, 152 (2007). The disclosure requirements of Rule 213 are mandatory and subject to strict compliance by the parties. *Sullivan v. Edward Hospital*, 209 Ill. 2d 100 (2004). To allow a party to ignore its plain language "defeats its purpose and encourages tactical gamesmanship." *Clayton v. County of Cook*, 346 Ill. App. 3d 367, 378 (2003). Enforcing the rule may even go so far as to reverse a jury verdict and remand for a new trial. See, *e.g.*, *Copeland v. Stebco Products Corp.*, 316 Ill. App. 3d 932, 946 (2000).

¶ 13        The impact of this violation is obvious: had Harwell known in 2008 that Fireman's Fund was limiting its liability to only $50,000, he could have sought settlement with Kipling or changed his trial strategy. It does Fireman's Fund no good to argue that it owed its duty to disclose only to Kipling, its insured; Harwell was the opposing party in the original lawsuit, Fireman's Fund was controlling Kipling's defense, and Fireman's Fund therefore had a duty to be forthcoming under supreme court rules. Nor does it help to argue that Fireman's Fund

answered the interrogatory accurately because the original policy did have a limit of $1 million; the asserted limit of $50,000 qualified as "additional" information that Fireman's Fund should have disclosed through Kipling because it represented the maximum liability limit under the policy. The $1 million figure was no longer accurate.

¶ 14        Instead of disclosing this information, Fireman's Fund went forward with trial, handling Kipling's defense. At oral argument, Fireman's Fund's counsel admitted that no matter what the outcome at trial, Fireman's Fund would not have paid out on the policy (because of the endorsement limiting liability to $50,000 due to subcontractor involvement in Harwell's injury). In other words, by not supplementing the interrogatory, Kipling and Fireman's Fund's counsel fashioned a "heads I win, tails I win" outcome. But, like so many best-laid plans, this one backfired.  In his petition for rehearing, Fireman's Fund's counsel alleges that following this Court's ruling would have forced them to withdraw from representing both Kipling and Fireman's Fund, and in doing so implicitly acknowledges the conflict of interest inherent in our analysis.

¶ 15        Fireman's Fund's agenda seems clear: deny coverage to Kipling, control the flow of information to Harwell, fight Harwell tooth and nail through the original case, and after losing the trial–reveal the endorsement. This smacks of sandbagging, which we do not condone. Instead, we find that equity demands that Fireman's Fund be estopped from asserting the endorsement against Harwell. This adheres to a fundamental maxim of the common law, which applies when dealing with improper discovery disclosures–a party should not be permitted to take advantage of a wrong, which he or she has committed.

¶ 16        Estoppel is a defensive action that will "prevent a party's disavowal of previous conduct if such repudiation would not be responsive to the demands of justice and good conscience."

(Internal quotation marks omitted.) *Nationwide Mutual Insurance Co. v. Filos*, 285 Ill. App. 3d 528, 533 (1996). More specifically, it "prevents the assertion of a contractual condition by a party who, through words or conduct, has fostered the impression that the condition will not be asserted as a legal defense." *Id.* A party claiming the benefit of an estoppel must show reasonable reliance on the acts of the other party, without "knowledge or convenient means" of learning the truth. *National Ben Franklin Insurance Co. v. Davidovitch*, 123 Ill. App. 3d 88, 93 (1984). The reliance must have resulted in prejudice or detriment. *Id.* Here, Fireman's Fund represented to Harwell in the answer to interrogatories that Kipling's insurance policy had a liability limit of $1 million. Afterwards, Fireman's Fund changed its position on the liability limit but did not tell Harwell, who was relying on Fireman's Fund's truthful representations while it was handling Kipling's defense. Harwell relied on this to his detriment and Fireman's Fund is now preventing him from collecting his damages.

¶ 17    Typically, this doctrine of estoppel attaches when an insurance company withholds information from, or misleads, the insured party. See, *e.g.*, *RLI Insurance Co. v. Illinois National Insurance Co.*, 335 Ill. App. 3d 633, 645 (2002). Here, Kipling was the insured and Farmer's Fund informed Kipling early on about the endorsement's effect on the liability limit. But Kipling went out of business at some point in the litigation and in any event seemed to play no role in either suit. It was Harwell who needed to know about the endorsement and the liability limit to make informed decisions about the litigation, and Harwell to whom Kipling's attorneys–the ones paid for by Fireman's Fund–owed a duty to supplement the interrogatory under supreme court rules. Broad principles of equity–the desire to prevent fraud and injustice—dictate that Fireman's Fund should not benefit from its attempted ruse.

¶ 18    Given we reverse, we need not address the parties' other arguments.

¶ 19          Reversed and remanded.