PATRICIA CONNERS *et al.*, Plaintiffs-Appellants, v. STUART POTICHA, Defendant-Appellee.

First District (2nd Division)   No. 1—96—3546

Opinion filed December 30, 1997.

Shawn A. Warner, of Patrick J. Kenneally, Ltd., of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago (Robert B. Austin and Diane I. Jennings, of counsel), for appellee.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, Patricia Conners, filed a complaint against defendant, Dr. Stuart Poticha, for the inadequate treatment of plaintiff's recurring infection subsequent to a hernia operation performed by defendant. The jury rendered a verdict in defendant's favor, and plaintiff filed a motion for a new trial asserting error in the admission of certain testimony offered by defendant and one of his expert witnesses. The trial court denied plaintiff's motion for a new trial. On appeal, plaintiff contends that the trial court committed reversible error: (1) by allowing defendant to offer a new opinion regarding the cause of plaintiff's infections that contradicted defendant's deposition testimony and that was based on speculation; and (2) by permitting defendant's expert witness to render a new opinion as to the cause of plaintiff's infections when such expert failed to disclose that opinion during discovery and where such opinion was based on mere conjecture.

## BACKGROUND

Plaintiff's complaint raised several issues relating to allegedly negligent medical care provided by defendant between February 1983 and June 1985. The circuit court of Cook County directed a verdict in defendant's favor on the bulk of those issues and submitted the case to a jury to resolve the single question of whether plaintiff's recurring infection was caused by defendant's failure to discover an allegedly infected suture. The facts relevant to plaintiff's appeal are as follows.

Plaintiff has undergone several abdominal surgeries over the past 45 years, including a ventral hernia operation in 1981. All of plaintiff's abdominal operations involved incisions at the same site. Consequently, the area of these incisions weakened and stretched over time, and in 1983, plaintiff sustained another ventral hernia, consisting of numerous holes in the muscular layers of the abdominal wall. In February 1983, defendant, a general surgeon, repaired the hernia by removing the prior incisions and sewing the entire area together in a single closure. Due to plaintiff's excessive weight, defendant decided that strong closure material was needed to withstand the stress on plaintiff's abdominal wall. Defendant, therefore, elected to use a combination of absorbable sutures and permanent nylon sutures in order that the connective tissues and muscles would be held together in the event that the area was not completely healed when the absorbable sutures dissolved.

Plaintiff's post-operative condition was normal for several weeks. Soon thereafter, however, plaintiff was twice admitted to surgery under defendant's care to have fluid removed from the site of her operation. On both occasions, the fluids tested negative for any type of bacteria or infection. Beginning in late March 1983, plaintiff was readmitted for treatment of an infection which appeared at the edge of her surgical wound next to healthy skin. From this time until May 1985, defendant removed infected tissue and prescribed antibiotics. Each attempt to exterminate any infection by tissue removal and antibiotics proved successful until plaintiff visited defendant again with recurring infection. Defendant's tests showed that each recurrence of plaintiff's infection was caused by entirely new bacteria which were combatted with different antibiotics and, in cases of particularly destructive bacteria, substantial tissue removal.

After 10 unsuccessful procedures to bring about final healing, defendant referred plaintiff to the Mayo Clinic. In June 1985, surgeons at the Mayo Clinic removed plaintiff's nylon suture and scar tissue, restitched the operation site, and made cosmetic corrections to the area. Plaintiff made a successful and complete recovery following this operation. A surgeon at the Mayo Clinic suggested that an infected suture could have been the cause of plaintiff's recurring infection. However, cultures of the suture material removed from plaintiff by the Mayo Clinic were negative for the presence of any bacteria.

Nevertheless, plaintiff and her husband, Thomas, filed suit against Dr. Poticha, alleging, in pertinent part, that plaintiff's recurring infection was caused by an infected suture placed by defendant during the February 1983 hernia operation, and that defendant was negligent in failing to discover that fact and remove the suture. At trial, defendant and his expert witness, Dr. Gordon Trenholme, testified at length on the issue of causation, stating that the sutures could not have been the cause of plaintiff's infections and that an external source must have been responsible. Plaintiff's earlier motions *in limine* to bar any testimony as to an external cause of infection were denied as were plaintiff's vigorous objections during the defense's aforementioned testimony. Plaintiff specifically objected on the grounds that, at their depositions, defendant and his expert were unable to offer any opinions as to the actual cause of plaintiff's infections and were, pursuant to Supreme Court Rule 220(d) (134 Ill. 2d R. 220(d)), precluded from rendering contradictory opinions on that subject while testifying at trial.

We affirm.

ANALYSIS

## I

■ Plaintiff's first contention is that defendant's trial testimony should have been excluded, since it was fraught with new opinion and speculation that contradicted his deposition testimony. Plaintiff relies on Supreme Court Rule 220(d), which states in pertinent part:

> "To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings ***, his direct testimony at trial may not be inconsistent with or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings." 134 Ill. 2d R. 220(d).

The purpose of this rule is to promote the timely disclosure of expert opinions in order that an opposing party will not be surprised or prejudiced by expert testimony at trial. *Sohaey v. Van Cura*, 158 Ill. 2d 375, 381-82 (1994); *Baird v. Adeli*, 214 Ill. App. 3d 47, 60, 573 N.E.2d 279, 286-87 (1991). Although defendant was not an expert witness, Rule 220(d) mandates that, as a defendant-physician, he may not testify at trial in contravention of his deposition testimony. *Karr v. Noel*, 212 Ill. App. 3d 575, 583, 571 N.E.2d 271, 276 (1991).

■ In the case at bar, plaintiff attempts to show with the following excerpt from defendant's deposition that defendant was specifically questioned as to the cause of plaintiff's recurring infection and did not opine that the source of her infection was external:

> "Q. Well, it just happens to be a fact of the case that she has got one particular infectious agent or another, or two or three or four?
>
> A. Well, it's peculiar for somebody who has a constant infection to have different bugs all the time.
>
> Q. What does it mean? What's the medical significance of that peculiarity?
>
> A. I don't know. Why would a patient have a continuing recurring infection at the periphery of the wound with a whole variety of different organisms?
>
> Q. You're still not able to answer that: is that correct?
>
> A. I don't know the answer."

Plaintiff then juxtaposes the above deposition statements with the following excerpt of defendant's trial testimony:

> "Q. Do you have an opinion, Doctor, based on a reasonable degree of medical certainty as to *** where this [bacteria] that was later cultured out came from?
>
> * * *
>
> A. Yes. *** At the time the [bacteria] was cultured, the wound was open. The wound had already been opened surgically, and

there was this big, gaping wound, and it came from the outside, it came from the patient's skin, the clothing, bedclothes, any of these places we talked about.

At the time the [bacteria] first showed up, the sutures at the base of the wound were covered over with granulation tissue. That was two months after the original operation. Those sutures were not exposed to [the bacteria]. There was no [bacteria] found before that."

A further inspection of defendant's deposition, however, reveals that defendant did, indeed, offer an opinion as to possible external sources of plaintiff's infection. One such example of defendant's deposition testimony reads in relevant part:

"Q. [T]o what factors do you assign the persistence of this infection?

\* \* \*

A. There are some real problems here because we've dealt with infected wounds and this kind of a suture abscess—you know, every surgeon has seen that. That's not uncommon. And it is not uncommon or difficult to trace it to a suture and realize that's the source of it and take it out. This is not this kind of infection. It's clear from all these hours we've just spent here, going through the chart, it must be clear even to you that *something else is going on here*. And the question is what. Okay. Well, *did she have some particular kind of bacteria that her body was unable to cope with and that persisted in the periphery of the wound*. We never were able to demonstrate that number one, and[;]

Number two, the bacteria constantly changed. Everytime [*sic*] she'd come in with sepsis it was something else.

And, number three, it was in an area that frequently towards the end it had been completely healed and ultimately broke down, opened, not where the sutures were. The typical pattern of a suture infection is that the wound that completely breaks down breaks down right over where the suture is or near there. You see a little hole. You stick it in an inch, low [*sic*] and behold, there's the suture. You pull it out and you know what the answer is. *That's not where this problem kept occurring*, and it's documented all over the chart at a great distance at the edge of the wound.

So why would the wound open up there? That was the problem that we had to face, and we never got a good explanation for it. *Was something rubbing on it? Was it clothing or something else*, or was there—I don't know why, but that was the problem." (Emphasis added.)

In analyzing whether defendant violated Rule 220(d) in the case at bar, we find *Holston v. Sisters of the Third Order of St. Francis*, 165 Ill. 2d 150 (1995), particularly instructive. In that case, the owner

and operator of a medical center was sued for negligence after plaintiffs' family member died from cardiac arrest following gastric bypass surgery to reduce her weight. The anesthesiologist during that procedure improperly inserted a monitoring catheter by allowing it to pierce the patient's heart, which caused an accumulation of fluid around her heart during her operation. Despite several attempts by the treating nurse to persuade her supervisor that the patient's post-operative heart symptoms indicated that she would soon die of cardiac arrest without immediate care, the hospital's charge nurse refused to inform doctors of the patient's increasing problem. When the patient's condition became critical, surgeons were finally notified, but the patient suffered a heart attack within minutes and subsequently died after being in a coma for one week. A jury entered a verdict in favor of plaintiffs, and defendant asserted on appeal that plaintiffs' expert witness violated Rule 220 by offering "new" or "amplified" testimony that deviated from his deposition testimony. Defendant argued that, during depositions, plaintiffs' expert expressed no criticism of the defendant or its nursing staff, but that, at trial, plaintiffs' expert testified that defendant had failed to conform to the proper standard of nursing care and hospital practice. The supreme court's review of the record indicated, however, that the expert's trial testimony was not a substantive alteration or extension of his deposition testimony and that he did, indeed, assert during his deposition that defendant erred and deviated from the proper standard of care. The court found that the record belied defendant's claim of surprise and prejudice from a Rule 220 violation and emphasized:

> "Even assuming that this new information caused [the expert's] testimony to technically exceed the scope of opinions expressed in his discovery deposition, Rule 220 does not mandate a rigid or hypertechnical approach to the disclosure and admission of expert opinion evidence when the realities of trial diverge from the anticipations of discovery." *Holston*, 165 Ill. 2d at 166.

In the case *sub judice*, the deposition statements by defendant were not only in accord with his consistently propounded and amply supported theory that the source of plaintiff's infection was not the sutures, but they also supported defendant's medical opinion that the cause of the infection was, by default, external. Prior to and during the proceedings, defendant provided persuasive arguments for ruling out possible internal sources, all of which led defendant through a process of elimination leaving only external sources as the possible cause of plaintiff's infections. The fact that, at trial, defendant may have expressed his theories of nonsuture causation and probable

external causation in more precise terms than during his deposition does not establish a *per se* violation of Rule 220. See, *e.g., Jarke v. Jackson Products, Inc.*, 282 Ill. App. 3d 292, 296-98, 668 N.E.2d 46, 48-49 (1996) (expert's use of different terms at trial compared to those used in deposition to describe dangerous product feature in product liability suit did not render expert's testimony inconsistent in violation of Rule 220). Furthermore, we note that it was sufficient for defendant simply to disprove plaintiff's theory of infected sutures as the cause of infection and that defendant had no burden whatsoever to prove which source among countless possibilities actually caused plaintiff's infection to recur. See *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 101 (1995) ("[A] defendant need not plead the sole proximate cause of another as an affirmative defense; rather, a general denial of any proximate cause is sufficient for the defendant to raise the defense"). Defendant's admission during his deposition that he could not say with certainty exactly what infectious agent or unhygienic activity of the plaintiff caused her infection is not contradicted by defendant's trial testimony as to what some of those possible external sources may have been. We believe that defendant's trial testimony as to causation did not constitute inconsistent opinion within the meaning of Rule 220(d). Rather, we find that such testimony represented an elaboration or refinement of a' well-established theory aimed at refuting the possibility of suture infection, leaving only external causal factors to blame, and that such testimony was within the fair scope of defendant's opinions disclosed in his deposition.

Moreover, defendant's testimony at trial was not speculative. Although defendant admitted to not knowing the precise cause of plaintiff's infection, he was certain of its external nature and many of its possible sources. Illinois courts have stated before that, while it is true that an expert witness may not base his opinion on conjecture or speculation (*Murphy v. General Motors Corp.*, 285 Ill. App. 3d 278, 282, 672 N.E.2d 371, 373 (1996)), a physician is allowed to testify as to possible causes of an injury based on facts assumed to be true, despite objection that his testimony is inconclusive or speculative. *Beloit Foundry v. Industrial Comm'n*, 62 Ill. 2d 535, 539 (1976); *Geers v. Brichta*, 248 Ill. App. 3d 398, 407, 618 N.E.2d 531, 538 (1993). In light of the fact that the trial court has wide discretion in ruling on the admissibility of expert testimony under Rule 220 (*Holston v. Sisters of the Third Order of St. Francis*, 165 Ill. 2d 150, 163 (1995); *Jarke v. Jackson Products, Inc.*, 282 Ill. App. 3d 292, 296, 668 N.E.2d 46, 48 (1996) (trial court's ruling under Rule 220 should not be disturbed without clear showing of abuse of discretion)), we believe the record

supports our conclusion that the trial court did not abuse its discretion in allowing defendant's testimony regarding causation.

## II

■ Plaintiff similarly argues that the trial court committed reversible error by allowing defendant's infectious disease expert to testify with respect to external causes of plaintiff's infections. We believe this contention to be without merit for reasons stated above. Indeed, our perusal of the record indicates that defendant's expert's opinions rendered in pretrial interrogatories and depositions were consistent with his opinions offered at trial. Defendant's expert not only provided numerous bases for his opinion that sutures were unrelated to plaintiff's infections, but he delineated several examples of probable external causes during his deposition. Plaintiff takes issue with the fact that, when questioned on cross-examination, defendant's expert offered additional, yet previously undisclosed, reasons and examples in support of defendant's theory of external causation. Once again, we find that such testimony constituted elaboration within the fair scope of the facts known and opinions disclosed during discovery. Moreover, defendant's expert's additional statements were invited by plaintiff's counsel as a result of persistent cross-examination. Illinois courts have long held that one may not seek relief from error which that party has caused to be injected into the proceedings. See *People v. Scott*, 148 Ill. 2d 479, 531 (1992); *People v. Gacy*, 103 Ill. 2d 1, 74 (1984); *People v. Brown*, 275 Ill. App. 3d 1105, 1112, 657 N.E.2d 642, 647-48 (1995).

Accordingly, we are unpersuaded that plaintiff was surprised or prejudiced by the testimony at issue, and we affirm the decision of the trial court.

Affirmed.

McNULTY, P.J., and TULLY, J., concur.