SELWYN COLEMAN, Indiv. and as Special Adm'r of the Estate of Dorothy Coleman, Deceased, Plaintiff-Appellant v. DENNIS ABELLA, Defendant-Appellee.

First District (5th Division)   No. 1—99—0711

Opinion filed June 8, 2001.

QUINN, P.J., dissenting.

Lanciloti Law Offices, of Roselle (Richard F. Lanciloti and Richard M. Lanciloti, of counsel), and Robert R. Verchota, of Winfield, for appellant.

McBreen, Kopko, McKay & Nora, of Chicago (Robert L. Nora, of counsel), for appellee.

JUSTICE REID delivered the opinion of the court:[1]

This is an appeal from a final judgment entered on the verdict of a jury and the denial of a posttrial motion seeking a new trial. At issue is Supreme Court Rule 213(g)(ii) (177 Ill. 2d R. 213(g)(ii)), which requires parties on written interrogatories to disclose the conclusions and opinions of their expert witnesses, along with the bases for those opinions. The trial court struck one of the plaintiff's experts, which the plaintiff claims is reversible error.

---

[1] Justice Reid has succeeded Justice Morton Zwick. The court has granted a petition for rehearing and withdrawn the court's previously filed opinion (filed November 13, 2000). Though Justice Reid did not participate in the oral argument, he has reviewed the record, the parties' briefs and a tape recording of the argument in this case.

Dorothy Coleman (Coleman) died on December 6, 1990. During 1989, Coleman had been admitted to the Alexian Brothers Medical Center complaining of difficulty breathing and a swollen tongue. Her attending physician was Dr. Dennis Abella, D.O. (Abella). During her stay at the hospital, Coleman's breathing gradually worsened, culminating in respiratory arrest requiring a stay in the intensive care unit and the use of a mechanical ventilator. Once she could breathe on her own, Coleman was transferred out of intensive care and monitored by hospital staff every few hours. On October 16, 1989, a blood gas test was performed which showed an above-normal level of carbon dioxide and a below-normal level of oxygen. The test was repeated on October 17, 1989, showing some improvement. At that time, Coleman's results were carbon dioxide on the high level of normal and a below-normal level of oxygen.

Coleman was observed sleeping at 6:45 a.m. on October 19, 1989. At 7:25 a.m., a nurse found an unresponsive Coleman not breathing and with no pulse. The hospital staff resuscitated Coleman, but the lack of oxygen to her brain left her in a coma in which she remained until her death.

In 1991, action was commenced on Coleman's behalf for damages against multiple defendants, including Dr. Abella. On December 18, 1995, the defendants took the deposition of Dr. Marianne Legato, one of plaintiff's opinion witnesses. The lawsuit was voluntarily dismissed before trial. On March 12, 1997, a new complaint was filed against Dr. Abella and others. By agreement of the parties, the prior discovery was allowed to stand. Following a settlement with most of the defendants, the case continued against Abella alone. Trial was held on August 24, 1998, at which plaintiff called two opinion witnesses.

Dr. Morris Papernik (Papernik) testified that he is a board-certified physician of internal medicine. He attended two years of medical school at the University of Autonomy de Guadalajara in Mexico then completed his medical education at Rush Medical College (Rush). After a one-year family practice internship, Papernik transferred to the internal medical program at Rush. Following his residency, Papernik began a fellowship in hematology and oncology, which he quit to find a better-paying job to support his family. Papernik, who has been in private practice in internal medicine since 1984, is also an associate attending physician and associate professor at Rush.

In preparing to render an opinion in Coleman's case, Papernik reviewed Coleman's medical chart and other doctors' depositions. Papernik considered his review of those materials gave him an adequate foundation for his opinions, claiming that a reasonably qualified

internist should be able to get all the information he needed from the charts. Papernik testified that an attending physician must be aware of everything going on with a patient and must be proactive on that patient's behalf in terms of his or her welfare. He also testified that, as an attending physician, he must make sure that what needs to be done for a patient gets done. This gives an attending physician an active role in making a treatment plan. Papernik opined that Abella breached the applicable standard of care in four ways while treating Coleman. According to Papernik, Coleman should have had a tracheostomy to ensure better airway protection, which could have prevented her second arrest. She also should have been better monitored after she was released from intensive care. Once the blood gas test results showed a high level of carbon dioxide and a low level of oxygen, Papernik felt Abella needed to have acted on them more appropriately. Finally, Abella should have had another blood gas test for Coleman on October 18, 1989, the day before her second respiratory arrest.

Papernik concluded that a reasonably well-qualified internist should have considered the high levels of carbon dioxide and low levels of oxygen in Coleman's blood to be red flags that something was wrong. Another test showing continued oxygenation difficulty would have indicated to a reasonably well-qualified internist the necessity for mechanical ventilation or airway protection. Papernik concluded that the second arrest was caused by the same obstructed process that caused the first arrest. Fatigue, malnutrition and pneumonia may have contributed to Coleman's underlying illness, but Papernik was completely convinced that an obstruction was the immediate cause of the full-blown respiratory arrest, a situation that should have been recognized on or before October 16, 1989, and corrected.

Also called as an opinion witness was Dr. Marianne Legato (Legato), who was referred to as the primary opinion witness. She testified that she was a graduate of the New York University College of Medicine in 1962 and that she completed one year of internship and two years of residency. Legato next completed a three-year fellowship at Columbia Presbyterian Medical Center and its affiliated hospital, St. Luke's Roosevelt Hospital. Legato then received a Research Career Development Award, which involves five years of special training. She is also a fellow of the American College of Physicians. After completion of the fellowship, Legato went into academic medicine at St. Luke's Roosevelt Hospital, where she spent her career teaching, doing research and clinical care. Dr. Legato founded and supervises The Partnership for Women's Health at Columbia Presbyterian, which includes both clinical and laboratory research. As an academic physi-

cian, Legato taught and supervised the care of patients in hospitals and clinics. She also directly cared for patients in clinics. Legato stated that she has continued to teach medicine, has written several books for both lay persons and medical professionals, and is currently a professor of clinical medicine at Columbia University College of Physicians and Surgeons.

Dr. Legato gave her deposition on December 18, 1995. At trial, Legato testified that she had never before testified as an expert witness in a medical malpractice case. In anticipation of rendering an opinion, she stated she reviewed Coleman's complete medical chart from the time of her admission through October 19, 1989, some depositions of lay witnesses and the deposition of Dr. Abella.

Legato gave the opinion that Abella failed to meet the standard of care in treating Coleman. She felt that Abella failed to definitively articulate Coleman's underlying diagnosis and the reasons for her illness. He also was wrong in not returning her to intensive care after she complained of her inability to swallow, to breath and her fear of dying. Even if the decision was made not to return her to intensive care, the applicable standard of care should have required Abella to order close monitoring of Colman's cardiac rhythm and her respiratory status. Legato further claimed that Abella deviated from the applicable standard of care in failing to do an exhaustive work-up on Coleman's tongue, including a biopsy. Legato concluded that Abella's deviations contributed to Coleman's respiratory arrest and subsequent coma.

On cross-examination, Legato was asked whether she ever reviewed the deposition of Dr. Grossman. When Legato indicated that she had reviewed the deposition, counsel for the defendant objected on the basis that the witness had been supplied with additional material after her deposition had been taken and that defense counsel had not received a supplemental disclosure revealing the additional materials that were supplied to her. According to Abella's counsel, the failure to notify him that Dr. Legato received and reviewed additional materials after her deposition was a "clear violation of Supreme Court Rule 213."

The trial court addressed the objection to Legato's testimony outside the presence of the jury. Legato admitted to reviewing 13 discovery depositions, 9 of which she received shortly before trial. The trial court asked Legato if she could "separate out" her testimony and render an opinion based only upon the materials she reviewed before her December 18, 1995, discovery deposition. Legato indicated that she could not, an answer in which she persisted, even after attempts to rehabilitate her so that she could disregard the materials she reviewed after her deposition was taken.

The trial court entertained argument from the parties, ultimately deciding to bar Dr. Legato's testimony in its entirety as a discovery sanction. The trial court based this decision on Legato's testimony that she could not "separate out" her testimony. The jury was then instructed that Legato's testimony would not remain in evidence and should be disregarded. Trial continued, culminating in a jury verdict in favor of defendant, Dr. Abella.

Plaintiff filed a posttrial motion seeking a new trial based on claims that the discovery sanction imposed was both unwarranted and unreasonable. The trial court denied the posttrial motion, issuing a written order outlining the reasons for the sanction. This appeal followed.

■ Plaintiff argues that the trial court erred in striking Dr. Legato's testimony because the decision not to apprise the defendant that Legato reviewed additional depositions does not violate Supreme Court Rule 213, which provides, in relevant part:

"Rule 213. Written Interrogatories of Parties.

\* \* \*

(f) Identity and Testimony of Witnesses. Upon written interrogatory, a party must furnish the identity and location of witnesses who will testify at trial, together with the subject of their testimony.

(g) Opinion Witness. An opinion witness is a person who will offer any opinion testimony. Upon written interrogatory, the party must state:

(i) the subject matter on which the opinion witness is expected to testify;

(ii) the conclusions and opinions of the opinion witness *and the bases therefor*; and

(iii) the qualifications of the opinion witness; and provide all reports of the opinion witness.

\* \* \*

(i) Duty to Supplement. A party has a duty to seasonably supplement or amend any prior answer or response whenever new or additional information subsequently becomes known to that party.

If a deposition of an opinion witness is taken, the witness' testimony at trial will be limited to the opinion expressed therein, in addition to those opinions identified in answers to Rule 213(g) interrogatories.

The opinions expressed in a deposition need not be later specifically identified in Rule 213(g) answers but, upon objection at trial, the burden is on the proponent of the witness to prove the opinions were provided in deposition or Rule 213(g) interrogatory." (Emphasis added.) 177 Ill. 2d R. 213.

Plaintiff argues that there is no duty to supplement a deposition

when the opinion witness has not changed his or her opinion. Supreme Court Rule 213 requires not only that a party "seasonably" supplement disclosures regarding new or different opinions held by an opinion witness, but also requires that the "bases" for any opinion be updated as well. Therefore, even when the bases for the opinion expressed at trial are not *broadened* by the supplementary material and the opinion itself remains unchanged from that expressed at the deposition, an obligation remains on counsel to update answers to Rule 213 interrogatories so the newly supplied material is disclosed to the opposing side.

Dr. Legato was provided with the depositions in question in an effort to better prepare her for trial. If Legato had read the depositions and informed the plaintiff's counsel that their contents had no bearing on the opinions she stated in her deposition and still wished to express at trial, it is understandable that plaintiff's counsel elected not to make a supplemental disclosure. *Conners v. Poticha*, 293 Ill. App. 3d 944, 951 (1997). In *Conners*, the court determined that an expert offered at trial whose testimony is merely an elaboration or refinement of deposition testimony that remains within the "fair scope" of facts known and opinions disclosed before trial requires no supplemental disclosure. In this case, the depositions reviewed by Dr. Legato merely contributed to the qualitative bases for her expert opinion, particularly on the issue of arterial blood gases.

Plaintiff next argues that, even if Rule 213 had been violated, the sanction of striking the entire testimony is too harsh since the violation was minor and the testimony was so important to the plaintiff's case.

Pursuant to Supreme Court Rule 219(c), trial judges have the authority to enter a wide range of orders when a party unreasonably fails to comply with discovery rules and orders. 134 Ill. 2d R. 219(c). The supreme court rules on discovery are mandatory rules of procedure that courts and counsel must follow. Discovery rules permit litigants to ascertain and rely upon the opinions of experts relied upon by their adversaries. *Department of Transportation v. Crull*, 294 Ill. App. 3d 531, 537 (1998). The supreme court rules represent the court's best efforts to manage the complex and important process of discovery. *Crull*, 294 Ill. App. 3d at 537. The committee comments to Rule 213 plainly state that one of the purposes of Rule 213 is to avoid surprise. 166 Ill. 2d R. 213(g), Committee Comments. To allow either side to ignore Rule 213's plain language defeats its purpose and encourages tactical gamesmanship. *Crull*, 294 Ill. App. 3d at 537, citing *Chicago & Illinois Midland Ry. Co. v. Crystal Lake Industrial Park, Inc.*, 225 Ill. App. 3d 653, 658 (1992). The committee comments also state that

" 'the subject matter of all opinions must be disclosed *** and that no new or additional opinions will be allowed unless the interests of justice require otherwise.' " *Crull*, 294 Ill. App. 3d at 536-37, quoting 166 Ill. 2d R. 213 (g), Committee Comments, at lxxviii.

■ Barring a witness from testifying is one of the sanctions available to a trial judge for a discovery rule violation under Supreme Court Rule 219(c). *Harris Trust & Savings Bank v. Otis Elevator Co.*, 297 Ill. App. 3d 383, 395 (1998). Decisions made by the trial court in fashioning such a remedy are not disturbed absent a clear showing of an abuse of discretion. *Parker v. Illinois Masonic Warren Barr Pavilion*, 299 Ill. App. 3d 495 (1998). Factors a trial court must consider in determining whether exclusion of a witness is an appropriate sanction are (1) surprise to the adverse party; (2) the prejudicial effect of the witness's testimony; (3) the nature of the witness's testimony; (4) the diligence of the adverse party; (5) whether the objection to the testimony was timely; and (6) the good faith of the party calling the witness. *Boatman's National Bank v. Martin*, 155 Ill. 2d 305, 314 (1993); *Warrender v. Millsop*, 304 Ill. App. 3d 260 (1999).

■ When the trial court admonished the jury to disregard the testimony of Dr. Legato, the case, for all intents and purposes, was over. Although she was one of the leading researchers and academics in the field, she had never before testified in court. The absence of her testimony has a crippling effect on Coleman's case. When the supreme court promulgated Rule 213 in 1995, it was clear that it desired to change the dynamics of the rules that previously had governed the treatment of expert witnesses. The thrust of this new rule was to allow less deviation from strict disclosure and to impose meaningful sanctions to insure that the conduct complained of was not likely to be repeated. *Crull*, 294 Ill. App. 3d 531.

Where an expert conducted additional tests after the taking of the discovery deposition and subsequently changed the basis of the testimony at trial, a mistrial would have been an appropriate sanction. *Copeland v. Stebco Products Corp.*, 316 Ill. App. 3d 932 (2000). In the case at bar, Legato gave her deposition in which she identified three failures of Abella's care of Coleman. While she did receive nine depositions just prior to trial to examine, there is no evidence that there was any variation from the opinion expressed in her deposition testimony to that given at trial. The essence of Legato's testimony during *voir dire* was that the later depositions may have "influenced [her] testimony on the arterial blood" and "deepened [her] understanding of what [she] wanted to say about arterial bloods, because [she] went back and rethought that." This admission is hardly the change in methodology in *Crull*, the additional testing with a change in the basis

of the expert's testimony as in *Copeland,* or the disclosure of completely new material as in *Seef v. Ingalls Memorial Hospital,* 311 Ill. App. 3d 7 (1999). Nor does Legato's testimony here provide a measure of causation at trial that was not explored during the discovery deposition as provided in *Susnis v. Radfar,* 317 Ill. App. 3d 817 (2000). Because the prior deposition taken by the defense of Dr. Legato contained the same opinions that she gave at trial, it was an abuse of discretion to strike her entire testimony.

Unless we are prepared to put expert witnesses in space or the deep freeze during the period between the deposition and the testimony at trial, deepening of a witness's understanding of some of the issues that were the subject of the deposition testimony must be a common matter for a doctor who writes articles, sees patients, attends conferences and interacts with the medical community at large after having given her discovery deposition. Because the supreme court has mandated strict compliance with Supreme Court Rule 213 in order to afford the parties to litigation full disclosure, courts should not be afraid, pursuant to their Supreme Court Rule 219 powers, to impose *reasonable sanctions* where appropriate. The decision whether to impose a sanction for failure to comply with a discovery order and, if so, what type of sanction to impose are decisions largely within the sound discretion of the trial court. *Peterson v. Ress Enterprises, Inc.,* 292 Ill. App. 3d 566, 579 (1997). The trial court in the matter at bar had options other than striking the expert's testimony *in toto,* effectively killing the plaintiff's case. It could have provided for the taking of an additional examination of the witness or punished the erring lawyer in a more traditional fashion. The court also could have limited the answers of the expert witness on cross-examination to only those matters she had read prior to her deposition. While this court does not excuse or condone the lax manner by which the plaintiff's counsel handled the matter, we feel the punishment should fit the crime. Under these particular facts and circumstances, because Dr. Legato's opinion given at her deposition was the same at trial and the only effect of the undisclosed new depositions that were read by her prior to trial was to make her more secure in her previously disclosed opinion, and take away some of the defense counsel's points on cross-examination regarding the narrow basis for the same opinion Dr. Legato held at the time of the deposition, the sanction selected by the trial court was an abuse of discretion. In light of the foregoing, the de-

cision of the trial court is reversed and the cause remanded for a new trial.

Reversed and remanded.

GREIMAN, J., concurs.

PRESIDING JUSTICE QUINN, dissenting:

I dissent. The most important function of a court of review is to provide direction to the trial courts as to how to address issues which arise at trial. We do this by uniformly applying established legal principles to the facts of the cases we review, and it is upon this uniform body of precedent that trial courts must rely when reaching their decisions. The majority's decision in the instant case is in direct conflict with this principle.

The majority holds that "[i]f Legato had read the depositions and informed the plaintiff's counsel that their contents had no bearing on the opinions she stated in her deposition and still wished to express at trial, it is understandable that plaintiff's counsel elected not to make a supplemental disclosure. *Conners v. Poticha*, 293 Ill. App. 3d 944, 951 (1997)." 322 Ill. App. 3d at 798. There are two significant problems with this holding. First, Dr. Legato did not inform plaintiff's counsel that the contents of the nine depositions, which she reviewed at that attorney's request, had no bearing on her opinions. Quite the contrary, Dr. Legato testified that the depositions concerning the blood gas levels influenced the testimony she had already given and that she could not say that those depositions would not influence her further testimony, even though she was instructed by the court to "separate out" the information from those depositions. Secondly, *Conners* interpreted Supreme Court Rule 220, the predecessor to Supreme Court Rule 213.

The significance of this distinction cannot be overstated. "Trial courts should be more reluctant under Rule 213 than they were under former Rule 220 (1) to permit the parties to deviate from the strict disclosure requirements, or (2) not to impose severe sanctions when such deviations occur. Indeed, we believe one of the reasons for new Rule 213 was the need to require stricter adherence to disclosure requirements." *Department of Transportation v. Crull*, 294 Ill. App. 3d 531, 535-39 (1998). The majority attempts to distinguish *Crull*, *Seef v. Ingalls Memorial Hospital*, 311 Ill. App. 3d 7 (1999), and *Susnis v. Radfar*, 317 Ill. App. 3d 817 (2000). The proposition that Supreme Court Rule 213 imposes stricter disclosure requirements than Supreme Court Rule 220 and trial courts should impose severe sanctions when

Rule 213 is violated has been espoused in numerous other cases: *Copeland v. Stebco Products Corp.*, 316 Ill. App. 3d 932 (2000); *LoCoco v. XL Disposal Corp.*, 307 Ill. App. 3d 684 (1999); *McMath v. Katholi*, 304 Ill. App. 3d 369 (1999); *Spain v. Owens Corning Fiberglass Corp.*, 304 Ill. App. 3d 356 (1999); *Warrender v. Millsop*, 304 Ill. App. 3d 260 (1999); and *Adami v. Belmonte*, 302 Ill. App. 3d 17 (1998).

The majority correctly recites the factors that a trial court must consider in determining whether exclusion of a witness is an appropriate sanction: (1) surprise to the adverse party; (2) the prejudicial effect of the witness's testimony; (3) the nature of the witness's testimony; (4) the diligence of the adverse party; (5) whether the objection to the testimony was timely; and (6) the good faith of the party calling the witness. *Boatman's National Bank v. Martin*, 155 Ill. 2d 305, 314 (1993); *Warrender v. Millsop*, 304 Ill. App. 3d 260 (1999). However, the majority's opinion does not apply these factors to the facts of this case.

The trial court conducted a lengthy *voir dire* of the witness out of the presence of the jury, heard arguments and made specific findings. The trial court explained its findings in a six-page written order denying the motion for new trial. The trial court carefully went through each of the factors set out in *Boatman's National Bank* prior to rendering its decision to strike Dr. Legato's testimony. First, the court determined that the defense was surprised by the disclosure. It was not until a day into Dr. Legato's testimony that it was revealed that Dr. Legato had reviewed additional depositions in preparing her opinion for trial.

Second and third, the trial court noted that the jury would have heard the same criticisms of Dr. Abella from Dr. Legato as it heard from Dr. Papernik and therefore concluded that Dr. Legato's testimony was cumulative. Although plaintiff argued that Dr. Legato was the "primary" opinion witness and that Dr. Abella's credentials were not as impressive as those of Dr. Legato, the trial court rejected these claims.

Fourth, the trial court noted that the defense had been diligent in requesting supplemental interrogatories. Plaintiff's claim that supplemental interrogatories were not required because the discovery request for them had occurred in the initial case, not the suit that was refiled, was properly rejected by the trial court in light of plaintiff's agreement to allow the prior discovery to "stand," and in light of supplemental interrogatories filed under Rule 213 by defendant on January 22, 1996, and March 6, 1996, which specifically requested that plaintiff identify the bases of the plaintiff's opinion witnesses' testimony. The court also noted that motion *in limine* No. 7 had requested that the parties be barred from offering testimony concern-

ing additional materials relied upon or additional bases for expert opinions that were not disclosed at the expert witnesses' depositions. Plaintiff did not object to this motion and it was granted pretrial.

Fifth, the defense made prompt objection to Dr. Legato's testimony as soon as it became clear that there had been a Rule 213 violation.

Sixth, and most damning to the plaintiff's claims, the court made an express finding that plaintiff acted with a lack of good faith in failing to disclose the additional information to the defense.

The majority writes that unless expert witnesses are put into "space or the deep freeze" after their depositions, it is to be expected that such witnesses will gain a deeper understanding of the issues in a case. 322 Ill. App. 3d at 800. The majority says this is to be expected of "a doctor who writes articles, sees patients, attends conferences and interacts with the medical community at large after having given her deposition testimony." 322 Ill. App. 3d at 800. While I do not argue with this supposition, it simply does not apply in this case. Here, shortly before trial commenced, plaintiff's counsel mailed nine depositions of witnesses to his retained expert witness. The majority concedes that this was done for the purpose of better preparing Dr. Legato for trial. Plaintiff's counsel then purposely failed to inform opposing counsel of this action in spite of receiving supplemental interrogatories before trial. Plaintiff's counsel's actions also violated a motion *in limine* filed immediately prior to trial. Plaintiff's counsel did not handle the pretrial discovery in this case in a "lax manner" as the majority concludes. Plaintiff's counsel purposely violated Supreme Court Rule 213, purposely failed to truthfully answer pretrial special interrogatories, and purposely violated a motion *in limine*.

The majority holds that the sanction imposed by the trial court was so severe it constituted an abuse of discretion. The alternative solutions suggested by the majority are wholly inadequate. The majority suggests that the trial court "could have limited the answers on cross-examination to only those matters she had read prior to her deposition." 322 Ill. App. 3d at 800. This is exactly what the trial court attempted to do in its attempts to rehabilitate the witness. A fair reading of the record in this case shows that the trial court went to great extremes to have the witness say that she could testify in a manner which did not violate the motion *in limine* and supplemental interrogatory requests. The expert witness testified that the depositions she had been sent had influenced her testimony on direct and she could not say that those depositions would not influence the remainder of her testimony. For this same reason, it is clear that the "taking of an additional examination of the witness" (322 Ill. App. 3d at 800) would also not solve the problem created by plaintiff's counsel's discovery violations.

The majority holds the trial court could have "punished the erring lawyer in a more traditional fashion." 322 Ill. App. 3d at 800. While the majority does not explicitly say so, I take this to mean the trial court could have held plaintiff's counsel in contempt. The majority does not explain how this action would solve the problem in this case. Appellate court holdings that encourage trial courts to hold lawyers in contempt often do so without giving adequate consideration to the consequences that result from such holdings. Lawyers who are found in contempt must report such findings to many prospective employers and, as a practical matter, even one contempt finding will often result in disqualifying that lawyer from appointment to the judiciary. Bar associations that review judges running for retention or for higher office often view holding lawyers in contempt to be evidence of "bad temperament" on the part of the judge. More importantly, the appellate court often reverses such findings. I would suggest that any appellate court judge who finds a trial court to be in error for not holding a lawyer in contempt should himself or herself feel duty bound to refer that lawyer to the Attorney Registration and Disciplinary Commission.

The majority also suggests that the trial court could have granted a mistrial as a sanction. Granting a mistrial in the instant case would punish both parties for the purposeful misconduct of one of the lawyers. Awarding costs in addition to granting the mistrial is also unrealistic as defense counsel conceivably should be compensated for hundreds of hours of work.

While the majority writes that "the punishment should fit the crime," it has rewarded plaintiff's counsel with a new trial after a jury rejected his case. In doing so, the majority sends a message to attorneys that the appellate court will reverse a trial court if two members of a panel would have handled the situation in a different manner. That is not the standard we are to apply. A decision to impose a particular discovery sanction is not to be reversed absent a clear abuse of discretion. *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 123 (1998). As the Illinois Supreme Court recently pointed out, this standard has been recognized as " 'the most deferential standard of review available with the exception of no review at all. [Citation.]' " *People v. Coleman*, 183 Ill. 2d 366, 387 (1998).

The rules on discovery are mandatory rules of procedure. *Department of Transportation v. Crull*, 294 Ill. App. 3d at 537. To allow either party to ignore Rule 213's plain language defeats its purpose and encourages tactical gamesmanship. *Spain v. Owens Corning Fiberglass Corp.*, 304 Ill. App. 3d at 368. The trial court's action in excluding the witness in this case was not only within the broad range of permis-

sible sanctions, its action was correct. Indeed, the extremely thorough and even-handed manner in which the trial court handled the situation was laudable. The trial court correctly applied the law, even though in doing so, the very sympathetic plaintiff's case was damaged. We expect our trial courts to make this type of tough decision, and when those decisions are made correctly, they should be affirmed.