PATRICIA SKUBAK, Indiv. and as Mother and Next Friend of Kimberly Skubak, a Minor, Plaintiffs-Appellants, v. LUTHERAN GENERAL HEALTH CARE SYSTEMS, d/b/a Lutheran General Hospital—Park Ridge, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—01—3327

Opinion filed May 13, 2003.

Barth H. Goldberg, of Goldberg & Goldberg, and David A. Novoselsky and Leslie J. Rosen, both of Novoselsky Law Offices, both of Chicago, for appellants.

Kay L. Schichtel and James Adamson, both of Swanson, Martin & Bell, of

Chicago, for appellees Samarjit S. Jaglan and Orthopedic Surgery Specialists, Ltd.

Carmel M. Cosgrave, Michael Resis, and James W. Fessler, all of O'Hagan, Smith & Amundsen, L.L.C., of Chicago, for other appellees.

JUSTICE CAHILL delivered the opinion of the court:

Plaintiff Patricia Skubak filed a medical malpractice action on her daughter's behalf against several defendants. They included Lutheran General Health Care Systems (Lutheran General) and Dr. Samarjit S. Jaglan (Dr. Jaglan), who performed surgery on the right leg of 12-year-old Kimberly Skubak in 1994. Plaintiff claims that negligent treatment and care by defendants triggered a chain of events resulting in Kimberly's severe and permanent disabilities. Following a trial in February 2001, the jury returned a verdict in defendants' favor.

Plaintiff appeals, claiming that the trial court abused its discretion in: (1) allowing Dr. Prudence Krieger, on cross-examination, to contradict her deposition testimony criticizing Dr. Jaglan based on her recent discovery that she had misunderstood the state of Kimberly's treatment; (2) allowing Dr. Steven Wardell and Dr. Jaglan to state undisclosed opinions about monitoring a sore on Kimberly's foot; and (3) allowing Dr. Dennis Gates to testify on cross-examination regarding professional standards on postoperative reports. Plaintiff claims that the testimony violated Supreme Court Rule 213 (Rule 213 or the rule) (177 Ill. 2d R. 213) (a party must disclose the conclusions and opinions of the opinion witnesses he or she will call, and supplement earlier responses when additional information becomes known).

We disagree. In the course of this opinion, we conclude that the trial court did not abuse its discretion in allowing the contested testimony. Plaintiff's contentions that statements made on cross-examination violate Rule 213 fail because the rule's disclosure requirements do not apply to cross-examination of an opposing party's opinion witness under *Maffett v. Bliss*, 329 Ill. App. 3d 562, 577, 771 N.E.2d 445 (2002). The other contested statements were admissible as elaborations or logical corollaries of defendants' Rule 213 disclosures, or as elaborations on the standard of care.

Kimberly Skubak was born on October 12, 1981. When she was 18 months old, she contracted meningitis. The illness left her with mental and physical disabilities, including difficulty walking. In 1991 and 1993, Dr. Jaglan, an orthopedic surgeon, performed operations to improve Kimberly's ambulation. On January 17, 1994, Dr. Jaglan operated on Kimberly at Lutheran General. To straighten her right leg, Dr. Jaglan performed bone surgery known as an osteotomy. He

stabilized the limb with an external fixator apparatus, percutaneous pins and a foot plate, or foot pad, which was strapped to the sole of her right foot. Kimberly was discharged from the hospital on January 19, 1994.

On January 26, 1994, Kimberly was readmitted to Lutheran General with a fever. She was treated with antibiotics and discharged three days later. On January 31, 1994, Kimberly's mother discovered a large sore on the bottom of her daughter's right foot. The sore was treated on an outpatient basis. On February 28, 1994, Kimberly was readmitted to Lutheran General with infections in both the surgical incision and in the sore on the bottom of her foot. On March 2, 1994, Dr. Jaglan removed the percutaneous pins, external fixator and foot plate, and replaced the pins with two percutaneous "K-wires," or "Kirschner wires," to stabilize her leg. He also cleaned and debrided (removed tissue from) the sore on her foot. Dr. Krieger, a pediatric infectious disease specialist, treated Kimberly's infections from March 4, 1994, to April 15, 1994. During that time, Dr. Krieger recommended that the "pins" in Kimberly's leg be removed because of the infection, but Dr. Jaglan disagreed. On April 19, 1994, Dr. Jaglan removed the K-wires. He last saw Kimberly as a patient in December 1994. She began seeing another orthopedist, Dr. Matthew Bueche.

In February 1995, plaintiff filed a medical malpractice complaint against Lutheran General and Dr. Jaglan. While the matter was pending, Dr. Bueche operated on Kimberly, including the partial amputation of her right foot in April 2000. She now uses a prosthetic device for walking.

Two to three weeks before the trial began on February 16, 2001, Dr. Krieger discovered that she had given deposition testimony based on a misunderstanding of the state of Kimberly's treatment. While meeting with Lutheran General's attorney, Dr. Krieger learned that the "pins" she had urged Dr. Jaglan to remove were not the original fixator pins from surgery, but the more recently inserted K-wires. The misunderstanding of Kimberly's treatment applied both to when she was treating Kimberly's infections and when she gave her two depositions. Dr. Krieger's discovery of her error was not disclosed to plaintiff.

The trial court conducted a pretrial hearing on the parties' motions *in limine* and discovery. Plaintiff's counsel contended that under Rule 213, he was not required to provide the names or opinions of potential witnesses because his disclosure of categories of persons to be called was sufficient. He argued for an interpretation of Rule 213 that required only general information about witnesses and their testimony. Defense counsel argued for an interpretation of the rule that required specific information about witnesses and their testimony.

The trial court ruled that the testimony of "anybody who was reasonably identifiable" would be allowed.

At trial, plaintiff called Dr. Krieger as an adverse witness under section 2—1102 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—1102 (West 2000)). Dr. Krieger testified that while treating Kimberly, she believed that the infection could be stopped if the pins were removed, but Dr. Jaglan opposed removing the K-wires because they were needed to stabilize the bone. Dr. Krieger first mentioned her misunderstanding about the "pins" during plaintiff's direct adverse examination. She said, "I actually thought they were the original pins. I was mistaken." Plaintiff did not object. She later testified, "[y]es, I thought they were the original pins. I was wrong," after which plaintiff's counsel asked for the latter portion to be stricken as unresponsive. The trial court did not strike the testimony, but directed the witness to answer the question as asked. Finally, plaintiff's counsel asked Dr. Krieger about the crosswires, to which she responded, "[y]es, I thought they were the original pins, however." The trial court granted plaintiff's resulting motion to strike and instructed the jury to disregard.

On cross-examination by Lutheran General, Dr. Krieger testified that when she used the term "pins" in her depositions, she meant the original fixator pins. She thought the fixator pins should be removed because the fixator had been removed and the pins would not have been stabilizing anything. Plaintiff objected, claiming that Lutheran General had elicited a new opinion from Dr. Krieger in violation of Rule 213. Noting that Dr. Krieger's deposition had included the same statement, the trial court overruled plaintiff's objection.

Under cross-examination by counsel for Dr. Jaglan, Dr. Krieger testified that she "thought the original pins were in place," and if she "had known [the pins] had been removed and new wires had been put in place to stabilize the bones, [she] would not have recommended their removal." Defendant objected based on Rule 213. The trial court concluded that Rule 213 did not apply to cross-examination, particularly where, as here, the witness was potentially very damaging to the cross-examining attorney's client. The trial court also allowed the cross-examination because it was based on material raised in plaintiff's direct examination of Dr. Krieger.

Plaintiff called Dr. Jaglan as an adverse witness. Dr. Jaglan said he operated on Kimberly on January 17, 1994, and examined her after the surgery when the foot plate was in place. He removed the external fixator and percutaneous pins on March 2, 1994. Dr. Jaglan's testimony included his statement that his assistant, Dr. Wardell, dictated a report on Kimberly's operation nearly two months after it occurred. In

defendant's case in chief, Dr. Jaglan testified that on January 25, 1994, he removed the straps and foot plate to inspect Kimberly's foot and ankle and saw no clinical signs of a problem on the sole of her foot. He also checked her foot and foot plate between January 26 and 29, 1994, and saw no problems.

Dr. Wardell also testified as an adverse witness. In her examination, plaintiff advanced her theory that the infection on Kimberly's foot was the result of a pressure sore which developed because the stabilizing foot plate was strapped on too tightly and improperly monitored. On cross-examination, Dr. Wardell testified that if the foot plate had been too tight, he would have written it in his notes, but he had not done so. When defense counsel asked whether Dr. Wardell could have run his finger under Kimberly's right foot and toes to assess how much room was between the sole of her foot and the foot plate, Dr. Wardell answered "yes."

Dr. Gates, an orthopedic surgeon, testified as plaintiff's expert. On cross-examination, defense counsel asked if it was common for attending physicians or residents to dictate operative reports several months after a procedure. Dr. Gates responded, "that could happen." Plaintiff objected based on Rule 213. The trial court overruled the objection for two reasons: Dr. Gates was testifying to the standard of care in the profession, and Rule 213 does not apply on cross-examination. Dr. Gates admitted that, after reading Dr. Krieger's deposition, it was obvious to him that she was confused as to the state of Kimberly's treatment when she disagreed with Dr. Jaglan.

On March 14, 2001, the jury returned a verdict for all defendants and against plaintiff. Plaintiff filed a posttrial motion for a new trial, claiming Rule 213 violations. The trial court denied the motion on August 9, 2001. This appeal followed.

Plaintiff claims that the trial court abused its discretion in overruling her Rule 213 objections and allowing testimony that was damaging to her theory of the case. Her theory relied heavily on Dr. Krieger's anticipated criticism of Dr. Jaglan's decision to leave "pins" in Kimberly's infected leg. Plaintiff asserts that she was "ambushed" by Dr. Krieger's testimony that, until a few weeks before the trial, she misunderstood what types of "pins" were in Kimberly's infected leg and how long they had been there. Lutheran General contends that Dr. Krieger's depositions clearly show that she was confused about the pins and plaintiff's counsel "attempted unfairly to use that confusion to his advantage." Dr. Jaglan characterizes Dr. Krieger's confusion as "self-evident" and asserts that plaintiff's counsel could not have been "so naive" as to be surprised when defense counsel probed Dr. Krieger's knowledge of orthopedic pins and crosswires.

■ The admission of evidence in a trial is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 294, 775 N.E.2d 964 (2002); *Seef v. Ingalls Memorial Hospital*, 311 Ill. App. 3d 7, 22, 724 N.E.2d 115 (1999). An abuse of discretion exists where no reasonable person would agree with the position of the trial court. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 176, 685 N.E.2d 871 (1997).

■ Here, plaintiff asserts that the trial court abused its discretion by allowing defendants to present evidence not disclosed in defendants' Rule 213 responses. At the time of the trial in 2001, the rule provided, in relevant part:

"(f) Identity and Testimony of Witnesses. Upon written interrogatory, a party must furnish the identity and location of witnesses who will testify at trial, together with the subject of their testimony.

(g) Opinion Witness. An opinion witness is a person who will offer any opinion testimony. Upon written interrogatory, the party must state:

(i) the subject matter on which the opinion witness is expected to testify;

(ii) the conclusions and opinions of the opinion witness and the bases therefor; and

(iii) the qualifications of the opinion witness;

and provide all reports of the opinion witness.

\*\*\*

(i) Duty to Supplement. A party has a duty to seasonably supplement or amend any prior answer or response whenever new or additional information subsequently becomes known to that party.

If a deposition of an opinion witness is taken, the witness' testimony at trial will be limited to the opinion expressed therein, in addition to those opinions identified in answers to Rule 213(g) interrogatories.

The opinions expressed in a deposition need not be later specifically identified in Rule 213(g) answers but, upon objection at trial, the burden is on the proponent of the witness to prove the opinions were provided in deposition or Rule 213(g) interrogatory." 177 Ill. 2d Rs. 213(f), (g), (i).

■ "The supreme court rules on discovery are mandatory rules of procedure that courts and counsel must follow. Discovery rules permit litigants to ascertain and rely upon the opinions of experts relied upon by their adversaries." *Coleman v. Abella*, 322 Ill. App. 3d 792, 798, 752 N.E.2d 1150 (2001). The purpose of Rule 213(g) is to avoid surprise by requiring parties to disclose the subject matter of all opinions. 177 Ill. 2d R. 213(g), Committee Comments—1995, at xxx-xxxi.

■ Defendants first assert that plaintiff's complaints of error are waived because plaintiff's position on Rule 213 disclosures in the pretrial proceedings conflicts with her position on appeal. See *McMath v. Katholi*, 191 Ill. 2d 251, 255, 730 N.E.2d 1 (2000) (a judgment in a defendant's favor must be affirmed if the plaintiff's position during the trial of her case, which was adopted by the trial court, is inconsistent with her position on appeal); *Auton v. Logan Landfill, Inc.*, 105 Ill. 2d 537, 543, 475 N.E.2d 817 (1984) (a party waives her right to complain of error where to do so is inconsistent with the position she took in an earlier court proceeding). Here, plaintiff asked to call witnesses whose identities and opinions had been only generally disclosed. The trial court agreed to allow unnamed witnesses to be called as long as they were reasonably identifiable from plaintiff's Rule 213 disclosures. Because plaintiff's pretrial posture is inconsistent with her present position, she has waived her claims for relief.

Defendants also contend that plaintiff failed to preserve certain issues for appellate review by not making contemporaneous objections in the trial court. See, *e.g.*, *Morrison v. Reckamp*, 294 Ill. App. 3d 1015, 1019, 691 N.E.2d 824 (1998). Where, as here, the record reflects that a plaintiff did not make the appropriate contemporaneous objections, the corresponding issues are waived on appeal.

■ Waiver aside, we will review plaintiff's claims that the trial court erred in allowing undisclosed testimony. A trial court's ruling on the admission of evidence will not be disturbed on review absent an abuse of discretion. *Maffett*, 329 Ill. App. 3d at 577. Dispositive is the holding that Rule 213 does not apply to testimony elicited from an opposing party's opinion witness. *Maffett*, 329 Ill. App. 3d at 577. In *Maffett*, the trial court properly allowed defendants to use previously undisclosed journal articles on cross-examination, finding "none of Rule 213's disclosure requirements applies to cross-examining an opposing party's opinion witness." *Maffett*, 329 Ill. App. 3d at 577. "In this regard, we agree with what the appellate court wrote in *Southern Illinois Airport Authority v. Smith*, 267 Ill. App. 3d 201, 206, 641 N.E.2d 1240 (1994): 'If the cross-examiner, to use a cliché, must telegraph his punch, cross-examination would lose its effectiveness. *** By eliminating the spontaneity, we would certainly avoid surprises. We may also be limiting the ability to ascertain the truth.' " *Maffett*, 329 Ill. App. 3d at 577. Under *Maffett*, the trial court here did not err in allowing Dr. Krieger to testify to her recently discovered error where she was called by plaintiff as an opinion witness and made the disputed statements on cross-examination.

Plaintiff argues that *Maffett* is not controlling because that opinion's statements about cross-examination are *dicta*. She contends

that *Maffett* is distinguishable because defendants here relied on the undisclosed opinion elicited in cross-examination to "ambush" her, in conflict with Rule 213's purpose of avoiding surprise. We disagree. As defendants point out, the position expressed in *Maffett* is also reflected in the supreme court's amendments to Rule 213 (effective July 1, 2002), preserving the freedom to cross-examine. The amended rule provides, "[w]ithout making disclosure under this rule *** a cross-examining party can elicit information, including opinions, from the witness." 177 Ill. 2d R. 213(g). While the rule goes on to identify an instance in which cross-examination must be restricted, that circumstance is not present here. The comity between *Maffett* and the recent amendment convinces us that the rule was not intended as a restraint on cross-examination. As to plaintiff's allegations that she was ambushed, the fact that Dr. Jaglan removed the external fixator pins two days before Dr. Krieger first saw Kimberly appeared in the depositions and documents that were available to all parties. Plaintiff's strategy of building her case on an opinion known to be based on a misunderstanding was unsuccessful, but not an "ambush."

In her appellate brief, plaintiff contends that the normal rules of cross-examination (and the *Maffett* opinion) do not apply here because Drs. Krieger, Jaglan and Wardell testified as adverse witnesses. The examination of adverse parties is governed by section 2—1102 of the Code, which provides that defendants in an action or their agents may be called and examined by a plaintiff, as if under cross-examination. 735 ILCS 5/2—1102 (West 2000). After the plaintiff's direct examination of the defendant as an adverse witness, defense counsel has the right to examine the defendant on matters to which he testified, but not to cross-examine him as an ordinary witness. *Edwards v. Martin*, 2 Ill. App. 2d 34, 41, 117 N.E.2d 864 (1954); accord *Griffin v. Subram*, 238 Ill. App. 3d 712, 719, 606 N.E.2d 560 (1992). An adverse witness called by a plaintiff may not be examined as to new matters by a defendant (*Horner v. Bell*, 336 Ill. App. 581, 588, 84 N.E.2d 762 (1949)), and the defense may not put on its own case before the jury (*Suich v. H&B Printing Machinery, Inc.*, 185 Ill. App. 3d 863, 877, 541 N.E.2d 1206 (1989)).

In this case, because Dr. Krieger's misunderstanding was raised on direct examination, it was properly allowed on cross-examination. See *Carter v. Azaran*, 332 Ill. App. 3d 948, 956, 774 N.E.2d 400 (2002) (cross-examination is generally limited to the scope of direct examination). Dr. Krieger mentioned her misunderstanding three times on direct examination, but her testimony was stricken in only one instance. It was not error for the trial court to permit defendants to pursue the issue of Dr. Krieger's misunderstanding on cross-examination.

Even if the testimony on the misunderstanding elicited by Lutheran General should have been stricken because the defendant was not entitled to true cross-examination of plaintiff's adverse witness, who was defendant's agent, the same cannot be said for testimony elicited by counsel for Dr. Jaglan. Because Dr. Krieger was a witness whose testimony and documents were potentially damaging to Dr. Jaglan, it would have been unfair to deny his right to cross-examine her. See *Tsoukas v. Lapid*, 315 Ill. App. 3d 372, 380, 733 N.E.2d 823 (2000) (cross-examination is a matter of right which allows a defendant to discover what potentially relevant information plaintiff's expert may have failed to consider in reaching an opinion). The trial court did not abuse its discretion in allowing Dr. Krieger to testify to her misunderstanding of the pins under examination by defendants.

■ Plaintiff next claims that the trial court should have barred Dr. Wardell's cross-examination testimony that Kimberly's foot plate was loose enough for him to slip his finger between the sole of her foot and the plate, and if there had been a problem with Kimberly's foot, he would have documented it. The record shows that both opinions were disclosed in the Rule 213 responses filed by defendants. Although Dr. Wardell's disclosures did not mention slipping a finger between the foot and foot pad, the comment was permissible as an elaboration. See *Scassifero v. Glaser*, 333 Ill. App. 3d 846, 860, 776 N.E.2d 859 (2002) (witnesses are allowed to elaborate or give logical corollaries to Rule 213 disclosures).

■ Plaintiff also claims trial court error in allowing Dr. Gates' cross-examination testimony in which he said it was not uncommon for physicians to dictate operative reports months after a procedure. Dr. Gates' testimony about the length of time between an operation and a physician's report was a permissible elaboration on the standard of care. "Evidence of custom and practice is proper to assist the jury in determining the applicable standard of care." *Nassar v. County of Cook*, 333 Ill. App. 3d 289, 300, 775 N.E.2d 154 (2002).

■ Finally, plaintiff claims the trial court erred in allowing Dr. Jaglan's testimony that he examined Kimberly's foot on January 25, 1994, and each day during her hospitalization from January 26 to 29, 1994. Lutheran General's Rule 213 disclosures state that Dr. Jaglan would testify, based on his recollections and records of care, that "Kimberly Skubak did not develop a sore on the bottom of her foot while she was a patient at [Lutheran General]." The disputed testimony is a logical corollary of his disclosure.

Plaintiff relies on *Seef*, 311 Ill. App. 3d at 21-22, where the trial court improperly allowed the undisclosed testimony of an expert witness. The court in *Seef* concluded that, although the trial court

conducted an exhaustive review of the plaintiff's Rule 213 objections, it applied the less stringent Supreme Court Rule 220 standards rather than the stricter Rule 213 standards in effect at the time. *Seef*, 311 Ill. App. 3d at 22. Supreme Court Rule 220 was repealed in 1995. See *Department of Transportation v. Crull*, 294 Ill. App. 3d 531, 538-39, 690 N.E.2d 143 (1998) (Rule 213 requires a higher standard of compliance than Rule 220). Unlike *Seef*, there is no evidence here that the trial court applied an improperly lax standard on disclosures. Although amendments strengthening Rule 213 became effective on July 1, 2002, the version applicable in this case was in effect from May 1997 through June 2002. 177 Ill. 2d R. 213. The trial court here did not apply Rule 220 or another improper standard in assessing defendants' compliance with Rule 213.

Plaintiff also relies on *Regala v. Rush North Shore Medical Center*, 323 Ill. App. 3d 579, 752 N.E.2d 443 (2001), where an expert physician called by the defendant stated in his deposition and on cross-examination at trial that the plaintiff's son would have been born without neurological damage if the delivery had occurred earlier. On redirect examination, the expert stated that the neurological damage would have occurred even if the child had been delivered earlier, expressing that opinion for the first time. This court ordered a new trial because the testimony was inadmissible, concluding that "[a]s the proponent of the witness, defendant bore the obligation to ensure that [its expert] not exceed previously disclosed opinions." *Regala*, 323 Ill. App. 3d at 585. Here, neither Lutheran General nor Dr. Jaglan was the proponent of Dr. Krieger and had no obligation to circumscribe her testimony. *Regala* does not require reversal.

Finally, plaintiff relies on *Copeland v. Stebco Products Corp.*, 316 Ill. App. 3d 932, 738 N.E.2d 199 (2000). In that product liability case, the plaintiff was injured when a bungee cord she was connecting to a portable luggage carrier suddenly released and struck her in the eye. We found that the trial court improperly allowed the plaintiff's expert to describe the results of tests conducted after he gave his depositions. Defense counsel based his case on the expert's deposition testimony that he could not replicate the cord release as described by the plaintiff, but the new tests demonstrated that the accident could have occurred as the plaintiff described. The plaintiff's failure to disclose the new basis for the expert's opinion violated Rule 213 because the "[d]efendant prepared his case, chose a theory of defense and conducted his cross-examination of [the expert] relying on the belief that [the expert] had not successfully achieved release geometry in the manner described by plaintiff." *Copeland*, 316 Ill. App. 3d at 945. The defendant first learned that the expert had achieved the corroborative

release geometry during cross-examination of the expert at trial. *Copeland*, 316 Ill. App. 3d at 945.

While a party's substantial reliance on deposition testimony is common to both *Copeland* and this case, there are additional facts here to support a different result. Based on our review of the record, the fact that Dr. Krieger was confused about orthopedic pins was within the " 'fair scope' of facts known and opinions disclosed before trial" and did not require supplemental disclosure. *Coleman*, 322 Ill. App. 3d at 798. Plaintiff's expert, Dr. Gates, testified that he was aware that Dr. Krieger was confused. Plaintiff could have known, and very likely did know, that Dr. Krieger was confused before making the strategic decision to rely on Dr. Krieger's statements in building her case. The result in *Copeland* does not preclude our affirmance in this case.

The judgment of the circuit court is affirmed.

Affirmed.

McBRIDE, P.J., and BURKE, J., concur.